**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 27, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

DANIEL GEORGE RENTERIA, a/k/a
William Esquivel, a/k/a Noe Renteria,

        Defendant - Appellant.

No. 12-8009

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

ALEX GARCIA, JR., a/k/a Hondo,

        Defendant - Appellant.

No. 12-8010

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

MIGUEL ANGEL ORDAZ, a/k/a
Isaias Rivera, a/k/a Tomas Hueso, Jr.,

        Defendant - Appellant.

No. 12-8019

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. No. 10-CR-00329-NDF-3, 4 and 7)**

Thomas A. Fleener of Fleener & Vang, L.L.C., Laramie, Wyoming, for Defendant - Appellant Daniel George Renteria.

Timothy Kingston (and Jill A. Higham of Higham Law, with him on the brief), Fort Collins, Colorado, for Defendant - Appellant Alex Garcia, Jr.

Michael Reese, Cheyenne, Wyoming, for Defendant - Appellant Miguel Angel Ordaz.

Stuart S. Healy, III, Assistant United States Attorney (and Christopher A. Crofts, United States Attorney, District of Wyoming, on the briefs), Cheyenne, Wyoming, for Plaintiff - Appellee.

Before **KELLY**, **GORSUCH**, and **HOLMES**, Circuit Judges.

**KELLY**, Circuit Judge.

Defendants-Appellants Daniel George Renteria, Alex Garcia, Jr., and Miguel Angel Ordaz were found guilty of various counts relating to a drug conspiracy in northern Wyoming and California. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

Background

Information compiled by law enforcement suggested that several members of a gang from Fresno, California—the Fresno Bulldogs—were living in northern

Wyoming and distributing methamphetamine from 2007–2010. This opinion concerns the trial of four members—Mr. Renteria, Mr. Garcia, Mr. Ordaz, and Robert Velasquez, Jr. (who has not appealed here). Over the course of five weeks, the jury considered the testimony of thirty witnesses.

Special Agent Michael Hall of the Wyoming Division of Criminal Investigation testified as to how the operation worked. Mr. Ordaz, Mr. Renteria, and Mr. Velasquez would periodically receive methamphetamine from Fresno Bulldog members in California, including Mr. Garcia. III R. (12-8010) at 718–23. Mr. Velasquez operated mainly out of Cody and Basin, Wyoming while Mr. Ordaz and Mr. Renteria operated mainly around Sheridan. Id. at 766–69. After selling the drugs, Mr. Velasquez, Mr. Ordaz, and Mr. Renteria would wire proceeds to Fresno. Id. at 727. Financial records from Money Gram, Western Union, and Green Dot supported some of these transactions. Id.

California Police Detective Ricardo Gonzalez provided identification testimony and explained certain characteristics of the Fresno Bulldogs, having investigated the organization for nine years. Id. at 999–1000. He specifically identified Mr. Ordaz as a member of the Fresno Bulldogs, identified photographs of Mr. Renteria, Mr. Ordaz, Mr. Velasquez, and Mr. Garcia, and pointed out various gang-related features in these photographs, including special tattoos, clothing, and hand signals. Id. at 1016–28.

Multiple cooperating witnesses testified to their purchases of

methamphetamine from Mr. Renteria, Mr. Ordaz, and Mr. Velasquez. See, e.g., id. at 1202–40 (testimony of Lisa Riggs implicating Mr. Velasquez); id. at 1284–93 (testimony of Juan Marquez implicating Mr. Velasquez); id. at 2121 (testimony of Amber Bear implicating Mr. Velasquez); id. at 2289–2309 (testimony of Cilia Downes implicating Mr. Velasquez, Mr. Renteria, and Mr. Ordaz); id. at 1864–71, 1904 (testimony of Jason Lyles implicating Mr. Renteria and Mr. Ordaz).

The testimony of one cooperating witness was particularly helpful to the prosecution of all Defendants. Melissa Morgan, one of Mr. Velasquez's girlfriends, explained that Mr. Garcia would periodically send Mr. Velasquez packages that contained candles. Id. at 1424–27. The bottoms of the candles were dug out and contained at least an ounce of methamphetamine each. Id. She described how Mr. Velasquez would remove the methamphetamine, cut it, and then repackage it for sale. Id. at 1441. She also testified about multiple trips she took with Mr. Velasquez to meet with Mr. Ordaz and Mr. Renteria and pick up methamphetamine. Id. at 1469–72. Mr. Ordaz and Mr. Renteria likewise traveled on multiple occasions to visit Mr. Velasquez in Basin and Cody and deliver methamphetamine. Id. at 1475–77. Ms. Morgan also once accompanied Mr. Velasquez to Fresno where she met Mr. Garcia, and she once wired drug proceeds to him and his girlfriend. Id. at 1453–63.

Ms. Morgan's brother, John Morgan, testified that Mr. Velasquez supplied

him with methamphetamine and that Mr. Velasquez told him that one of his sources was Mr. Garcia. Id. at 2379. Mr. Morgan also testified that once Mr. Velasquez was incarcerated, Mr. Renteria became his supplier. Id. at 2416–17. Originally, Mr. Renteria provided the methamphetamine in ounce quantities, but when Mr. Morgan could not move it quickly enough, Mr. Morgan began purchasing it in quarter-ounce and half-ounce quantities. Id. at 2419–21.

Two of Mr. Renteria's girlfriends corroborated much of Ms. Morgan's testimony regarding Mr. Velasquez and Mr. Renteria's relationship. Id. at 338–39. Candice Kysar testified that Mr. Renteria's only source of income was from drug sales and that she saw Mr. Renteria cut, repackage, and sell methamphetamine, usually in 3.5 gram amounts, nearly every day. Id. at 331–34, 341. Danni Fox testified that she saw Mr. Renteria receive packages of methamphetamine and cut it before selling it, and that she helped wire large amounts of money to California, money which Mr. Renteria claimed was for his children. Id. at 1845–55.

Kimberly Perkins, another cooperating witness, testified that she was aware Mr. Renteria and Mr. Ordaz were distributing methamphetamine at their apartment and that she was purchasing it for her own use and resale. Id. at 1926–36. She agreed to receive overnight packages of methamphetamine for Mr. Renteria and Mr. Ordaz at both her home and workplace and received about a package a week for a year's duration. Id. at 1934–41, 1957, 1974.

John Sullivan, a fraud investigator for UPS, explained shipping records from Fresno to addresses associated with Mr. Ordaz, Mr. Renteria, and Ms. Perkins. Id. at 2218–28. Records custodians from Western Union and Money Gram also testified, id. at 2610, 2653, and the district court admitted summary charts of these records, id. at 3009–10; see also Aplee. Br. (12-8009), Att. at 8–23 (Ex. 5000–03).

During a search of Mr. Ordaz's home, law enforcement officials, including Special Agent Loy Young, seized a .38 caliber pistol, a pearl handle 9 millimeter handgun, a .308 caliber bolt action rifle, a 56 SKS assault rifle, a .22 long rifle, and associated ammunition. Id. at 912, 944–47. They also recovered a black bag containing a shortened MP-5 machine gun, two bags of methamphetamine, a digital scale and weigh pan, assorted ammunition, and a banana clip for an SKS assault rifle. Id. at 948–51. Additionally, they seized various photographs, documents, additional ammunition, and shell casings. Id. at 969–81. Mr. Lyles, Mr. Morgan, Ms. Kysar, and Ms. Perkins all testified to seeing Mr. Ordaz display a variety of these guns at various times. See, e.g., id. at 1876, 2441, 343–49, 1996–98.

Mr. Renteria was found guilty of conspiracy to possess with intent to distribute, and conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A) and conspiracy to launder money in violation of 18 U.S.C. § 1956(a)(1)(A)(I) and 1956(h). He was sentenced to 188

months' imprisonment on both counts to be served concurrently, and 5 years' supervised release as to Count One and 3 years as to Count Two also to be served concurrently. I R. (12-8009) at 565–67.

Mr. Garcia was found guilty of conspiracy to launder money in violation of 18 U.S.C. § 1956(a)(1)(A)(I), (a)(1)(B)(I), and 1956(h) and sentenced to 70 months' imprisonment and 3 years' supervised release. I R. (12-8010) at 604–06.

Mr. Ordaz was convicted of conspiracy to traffic in methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A) (Count One); conspiracy to launder money in violation of 18 U.S.C. § 1956(a)(1)(A)(I) and 1956(h) (Count Two); possessing firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (Counts Ten and Twelve); possessing methamphetamine with intent to distribute in violation of § 841(a)(1) and (b)(1)(B) (Count Eleven); possessing a machine gun in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(B)(ii) (Count Thirteen); and possession of a firearm in violation of 26 U.S.C. §§ 5841, 5845(a), 5861(d) and 5871 (Count Fourteen). I R. (12-8019) at 970, 973. The court, however, dismissed Count Ten on the government's motion because the predicate offense was the same offense alleged in Count Thirteen. Id. at 970. The court sentenced Mr. Ordaz to a term of 120 months' imprisonment as to Counts One, Two, and Eleven, 120 months as to Count Fourteen to be served concurrently with Counts One, Two, and Eleven, 30 years as to Count Thirteen to run consecutively to all

other counts, and 25 years as to Count Twelve also to run consecutively to all other counts. Id. at 975. The court also imposed 5 years' supervised release as to Counts One, Two, Eleven, Twelve, and Thirteen and 3 years as to Count Fourteen, all to be served concurrently. Id. at 976.

## Discussion

Mr. Renteria raises three specific arguments on appeal, Mr. Garcia one, and Mr. Ordaz five. However, because their cases have been consolidated, each Defendant attempts to incorporate the others' arguments as applicable. For example, Mr. Renteria attempts to "adopt[] the arguments made by Defendant[s] Ordaz and Garcia . . . so far as they pertain to [him]." Aplt. Br. (12-8009) 47. And Mr. Garcia asks to "incorporate[] any and all pertinent arguments briefed and/or argued by Defendants Renteria and Ordaz." Aplt. Br. (12-8010) 7. This is problematic because it requires the court to sift through the briefing and record and imagine which arguments might apply to which Defendants. We decline that invitation. Fed. R. App. P. 28(i) allows a defendant to "join in a brief" or "adopt by reference a part of another's brief." In a case such as this, however, the court needs some direction from the Defendant seeking to adopt another's argument—specifically, how the argument applies to the adopting Defendant. See United States v. Swingler, 758 F.2d 477, 493 (10th Cir. 1985). We will allow Defendants to adopt one another's arguments but only to the extent we can

discern a clear and straightforward application to the facts that is fairly presented. See Kokins v. Teleflex, Inc., 621 F.3d 1290, 1301 n.6 (10th Cir. 2010).

A.    Giglio Claim

Mr. Renteria maintains that the government made two undisclosed promises of leniency to witnesses Melissa Morgan and John Morgan in return for their testimony.  He argues that the government's failure to disclose these alleged subrosa agreements violates Giglio and warrants a new trial.  See Giglio v. United States, 405 U.S. 150, 152–55 (1972).  Because Mr. Garcia and Mr. Ordaz attempted to incorporate this argument specifically and its application to them is apparent, we consider the issue as it relates to all three defendants.

Ms. Morgan testified that she would receive a sentence of eight to ten years' incarceration pursuant to a plea in Wyoming state court and that her testimony against Mr. Renteria would not change that sentence.  III R. (12-8010) at 1438.  Mr. Renteria's brief indicates, without record support, that instead Ms. Morgan has received a sentence of four to six years.  Aplt. Br. (12-8009) 20–21.

Mr. Morgan testified that he would receive a sentence of fifteen years pursuant to a plea in federal court and that he was not going to receive a downward departure or any additional consideration for his testimony at trial.  III R. (12-9010) at 2364–65.  Again in briefing and again without record support, Mr. Renteria alleges that Mr. Morgan's sentence was also reduced from fifteen to ten years.  Aplee. Br. (12-8009) 21–24.

- 9 -

These lower-than-expected sentences might indicate that the government had an agreement with the witnesses that went undisclosed. The problem is Defendants did not raise this issue in the district court and there is no record before us of any undisclosed agreement. Appellate courts rarely consider arguments not raised below, let alone arguments that require the development of a factual record. See United States v. Hernandez-Rodriguez, 352 F.3d 1325, 1328 (10th Cir. 2003). Here there are no factual or legal determinations on the matter for us to review, and Defendants concede as much. See Aplt. Reply Br. (12-8009) at 13. At oral argument, we inquired about Defendants developing the record in the district court, but they have failed to pursue such a course of action. See Fed. R. Crim. P. 37; Fed. R. App. P. 12.1. Accordingly, we consider this argument waived for want of a factual record.

B.     Admission of Exhibits 5000–5003

Mr. Renteria alleges that the district court abused its discretion when it admitted Exhibits 5000–5003 (summary charts) over objection. This court reviews a district court's evidentiary rulings for abuse of discretion. United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003). Because only Exhibit 5002 pertains to Mr. Renteria, 5000 pertains to Mr. Ordaz, and 5003 pertains to Mr. Garcia, we review this claim as to all three Defendants.

Special Agent Hall compiled four summary charts based upon UPS, Money Gram, and Western Union documents. III R. (12-8010) at 3002–11. The actual

UPS and wire transfer records were admitted as business records.  Id.

Such summary evidence would usually be permissible under Fed. R. Evid.

1006.  The rule provides:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

Fed. R. Evid. 1006.  Defendants suggest, however, that Special Agent Hall added

dates from the testimony of Ms. Kysar and Ms. Fox regarding the wirings they

initiated, making the charts an impermissible summary of testimony rather than of

documents.  III R. (12-8010) at 3016–17.

Fed. R. Evid. 611(a), however, allows for such summary evidence

otherwise inadmissible under Rule 1006.  Rule 611(a) provides:

> The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to:
> (1) make those procedures effective for determining the truth;
> (2) avoid wasting time; and
> (3) protect witnesses from harassment or undue embarrassment.

Fed. R. Evid. 611(a).  In United States v. Ray, this court adopted a two-part test

to determine whether summarized exhibits relying on previous testimony are

admissible under Rule 611(a).  370 F.3d 1039, 1046–47 (10th Cir. 2004), rev'd

and remanded on other grounds by United States v. Booker, 543 U.S. 220 (2005).

First, the court considers "whether the summary chart . . . aids the jury in

- 11 -

ascertaining the truth." Id. at 1046. Relevant factors include the length of trial, the complexity of case, and the possible confusion generated by a large number of exhibits. Id. at 1047. All of these factors favor admission here: the trial lasted five weeks and consisted of thirty witnesses, several of whom were experts and all of whom provided evidence of an alleged conspiracy over three years in multiple locations. In fact, Mr. Renteria all but concedes the government meets the first element of the Ray test. See Aplt. Br. (12-8009) 33.

Second, the court considers any resulting prejudice, looking at whether, for example, the preparer was available for cross examination and whether the court gave any limiting instructions. 370 F.3d at 1047. Although there were no limiting instructions here, none were requested, and the preparer, Special Agent Hall, was subjected to extensive cross examination. Moreover, the charts were almost entirely a summary of record exhibits and quantities which are admissible under Rule 1006. Therefore, we conclude the court did not abuse its discretion.

C.    Sufficiency of the Evidence

We review the sufficiency of the evidence to support a jury verdict de novo. United States v. Dazey, 403 F.3d 1147, 1159 (10th Cir. 2005). In doing so, we consider all evidence and reasonable inferences in the light most favorable to the government, and we may not weigh evidence or consider credibility of witnesses. Id. Because each Defendant's sufficiency argument is unique, we review them independently.

1.    Mr. Renteria

Mr. Renteria first argues that there was insufficient evidence to support his conviction for conspiring to distribute methamphetamine and to distribute an amount over 500 grams. To prove a conspiracy in violation of 21 U.S.C. § 841(a)(1), the government must prove: (1) an agreement with another person to violate the Controlled Substance Act; (2) knowledge of the essential objectives of the conspiracy; (3) knowing and voluntary involvement; and (4) interdependence among the alleged conspirators. United States v. Hernandez, 509 F.3d 1290, 1295 (10th Cir. 2007).

Multiple witnesses, including Ms. Perkins, Ms. Kysar, Ms. Morgan, and Mr. Morgan, testified that Mr. Renteria and others were involved in a drug conspiracy. Money Gram, Western Union, and UPS records, and testimony of Ms. Bear, Ms. Perkins, and Ms. Kysar indicate that Mr. Renteria's income was from the sale of methamphetamine and that he frequently wired proceeds to Fresno. A jury could reasonably conclude that Mr. Renteria distributed over 500 grams solely on account of Ms. Perkins's testimony that she received packages on a weekly basis. See III R. (12-8010) at 1965. Although this amount is based on circumstance and inference, it is nevertheless sufficient for a finding beyond a reasonable doubt. Dazey, 403 F.3d at 1159 (concluding conspiracy convictions may be based on inferences from circumstantial evidence alone).

Contrary to Mr. Renteria's suggestion, the fact that this inculpatory

- 13 -

evidence originated from co-conspirators and methamphetamine users does not make it insufficient. See Aplt. Br. (12-8009) 7, 13, 36–39. The credibility of these witnesses was for the jury to consider, and we may not reevaluate it in retrospect. See United States v. Sanders, 240 F.3d 1279, 1281 (10th Cir. 2001).

Mr. Renteria also argues that the evidence was insufficient to prove conspiracy to launder money beyond a reasonable doubt. To prove a money laundering conspiracy, the evidence must establish (1) an agreement with another to knowingly conduct a financial transaction involving the proceeds of a specified unlawful activity with the intent to further the specified unlawful activity; (2) knowledge of the essential objectives of the conspiracy; (3) knowing and voluntary involvement; and (4) interdependence among the alleged conspirators. United States v. Keck, 643 F.3d 789, 794 (10th Cir. 2011).

Money Gram and Western Union records established that between May and August 2009, Mr. Renteria, or one of his girlfriends, sent in excess of $20,000 to associates in Fresno, California and that he received multiple packages from Fresno during that same time. Various testimony indicated that Mr. Renteria had no consistent employment during this time. This, combined with other testimony from multiple witnesses, fairly supports an inference that he was involved in a conspiracy to launder money.

2.    Mr. Garcia

Mr. Garcia also argues that the government's evidence was insufficient to support a conviction of conspiracy to launder money in violation of 18 U.S.C. § 1956(a)(1)(A)(I), (a)(1)(B)(I), and 1956(h). In particular, Mr. Garcia points to three tactics that he finds troubling: (1) overemphasis on the testimony of a few unreliable witnesses, namely the Morgans; (2) courtroom bravado and misleading evidence; and (3) assumption of his involvement in the drug conspiracy to prove participation in money laundering conspiracy. Aplt. Br. (12-8010) 6–7.

First, Mr. Garcia argues that the Morgans are "dishonest, sentence reduction-chasing, co-conspirators-turned-government witnesses." Id. at 6. But given our standard of review, this argument is better suited for the jury than an appellate court. See Sanders, 240 F.3d at 1281 (concluding credibility determinations are for the jury).

Second, Mr. Garcia spends much effort focusing on potential evidence that the government did not provide—namely testimony from individuals in California. But that is true in most every case—more could have been done. The issue is whether what was provided was enough and the answer is unequivocal. The testimony of multiple witnesses in addition to the evidence provided by the records custodian at Money Gram was certainly sufficient. See, e.g., III R. (12-8010) at 2653–79.

Finally, we note that the jury's failure to reach a guilty verdict on the drug trafficking conspiracy is irrelevant to the sufficiency of the evidence for the

money laundering conspiracy.  See United States v. Irvin, 682 F.3d 1254, 1271 (10th Cir. 2012).

### 3.    Mr. Ordaz

Mr. Ordaz makes two sufficiency arguments.  First, he argues that there was insufficient evidence that he possessed a machine gun in furtherance of a conspiracy (Count Thirteen).  In order to prove this count, the evidence must show that Mr. Ordaz (1) committed the underlying offense, (2) possessed the MP-5 machine gun, and (3) did so in furtherance of the drug trafficking crime charge in Count One.  United States v. King, 632 F.3d 646, 650 (10th Cir. 2011).  Mr. Ordaz argues the evidence is insufficient only with respect to the third element.

A firearm is possessed in furtherance of a drug trafficking crime if it assists, promotes, or aids in accomplishing, advancing, or achieving the goal or objective of the underlying offense.  United States v. Rockey, 449 F.3d 1099, 1103 (10th Cir. 2006).  Mere presence of a firearm is not enough; there must be some nexus between the possession and the offense.  Id.  The factors a jury may consider include: (1) the type of drug activity being conducted, (2) the accessibility of the firearm, (3) the type of firearm involved, (4) whether the possession of the firearm is illegal, (5) whether the gun is loaded, (6) the proximity of the firearm to the drugs or drug profits, and (7) the time and circumstances under which the gun is found.  United States v. Lott, 310 F.3d 1231, 1247 (10th Cir. 2002).

In light of these factors, there is ample evidence to conclude Mr. Ordaz possessed the machine gun in furtherance of this conspiracy. Mr. Ordaz puts much weight on the fact that a missing pin needed to assemble the gun was only found shortly before trial, but this pertains to only one factor. The remaining factors clearly cut in favor of the government. The MP-5 machine gun was found in a bag identified as Mr. Ordaz's that contained methamphetamine, a cutting agent, scales, and ammunition. It was found in a home where multiple witnesses testified they purchased methamphetamine from Mr. Ordaz. Moreover, the machine gun was unlawful for multiple reasons, including the fact that is was missing a serial number, had a shortened barrel, and was unregistered. This is certainly sufficient.

Second, Mr. Ordaz argues that the evidence is insufficient to prove that he possessed the rifles and pistols listed in Count Twelve in furtherance of an intent to distribute methamphetamine. He again only challenges the "in furtherance" element. And again, the relevant factors are easily met. Multiple witnesses testified about Mr. Ordaz's drug distribution and had seen him handle several of the firearms in connection with it. Moreover, the firearms again were located within close proximity to the methamphetamine recovered from his home.

Mr. Ordaz also, however, contends that the district court erred in failing to instruct the jury to return a unanimous verdict as to which firearm supported the 18 U.S.C. § 924(c) conviction set forth in Count Twelve. Because he made no

specific objection below, we review this argument for plain error. See United States v. Rosalez, 711 F.3d 1194, 1212 (10th Cir. 2013). "Plain error occurs when there is (i) error, (ii) that is plain, which (iii) affects the defendant's substantial rights, and which (iv) seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (quotation omitted).

This court in Moore considered a similar unanimity argument in a case involving multiple firearms and rejected it. United States v. Moore, 919 F.2d 1471, 1476 (10th Cir. 1990). There, the jury convicted the defendant of two § 924(c) counts. One count included three firearms and the jury was not instructed to unanimously find which particular firearm applied to its verdict. This court concluded that was not error where each firearm could have been considered possessed in furtherance of his intent to distribute. Id.[1] For the reasons described above, the same is true here.

Mr. Ordaz relies on a Third Circuit decision in which the court criticized a jury instruction that did not require the jury to specify which of several firearms was used in connection with the predicate offense. See United States v. Theodoropoulos, 866 F.2d 587, 598 (3d Cir. 1989), overruled on other grounds by United States v. Price, 76 F.3d 526, 528 (3d Cir. 1996). However, unlike Theodoropoulos, where several firearms were found in a trash can outside the

---

[1] The court nevertheless remanded for resentencing because both § 924(c) counts were tied to the same predicate drug offense. We do not have that problem here.

house, here all the guns were found within the defendant's apartment and in close proximity to the drugs. Moreover, in Theodoropoulos, the court determined only one of the four guns at issue could support the § 924(c) conviction as a matter of law. Id. at 598. Here, all of the guns listed were found in Mr. Ordaz's home, and all were easily accessible. Any one of them was sufficient.

Other courts have also found that jury unanimity with respect to the particular firearm used is not required. United States v. Perry, 560 F.3d 246, 257 (4th Cir. 2009); United States v. Wise, 515 F.3d 207, 215 (3d Cir. 2008); United States v. DeJohn, 368 F.3d 533, 540 (6th Cir. 2004); United States v. Hernandez-Albino, 177 F.3d 33, 40 (1st Cir. 1999); United States v. Morin, 33 F.3d 1351, 1353–54 (11th Cir. 1994); United States v. Correa-Ventura, 6 F.3d 1070, 1087 (5th Cir. 1993). We therefore conclude the fact that the court did not provide the jury with a special verdict form was not error, let alone plain error, especially considering that Mr. Ordaz failed to request one.

D.    Multiplicitous Convictions

Mr. Ordaz argues that Counts Twelve and Thirteen are multiplicitous. Because he did not raise this argument below, we review for plain error. Moreover, we review this argument only with respect to Mr. Ordaz.

This argument fails as a matter of law because both counts are tied to separate predicate offenses. The underlying predicate offense for Count Twelve was possession of methamphetamine with intent to distribute, in violation of 21

U.S.C. § 841(a)(1) and (b)(1)(B). The underlying offense for Count Thirteen was conspiracy to traffic in methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. These are separate offenses and each supports a separate charge under 18 U.S.C. § 924(c). See United States v. Jenkins, 313 F.3d 549, 557–58 (10th Cir. 2002).

E.      Admission of Gang Affiliation Evidence

Mr. Ordaz next argues that the district court erred in allowing presentation of unduly prejudicial gang evidence. Prior to trial, Mr. Ordaz filed a motion in limine to exclude all evidence of his gang affiliation, arguing it was unduly prejudicial in violation of Fed. R. Evid. 403. The district court denied the motion, finding such associational evidence generally relevant to prove a conspiracy, but allowed for specific objections during trial, including to "particular items that are more prejudicial than probative." I R. (12-8019) at 556–57. Out of abundant caution, we review this claim as it might pertain to all Defendants.

The issue of relevance has been preserved, but we cannot say the same for the Rule 403 objection. Of course, preservation of a claim of error in admitting evidence requires a timely and specific objection. Fed. R. Evid. 103(a)(1). If the district court rules definitively on an evidentiary issue before trial, it is unnecessary to renew an objection to preserve it. Fed. R. Evid. 103(b). Here the district court made a blanket ruling on relevance, but then indicated it would

- 20 -

consider objections based upon Rule 403 during trial. Mr. Ordaz made no objections, and Mr. Renteria's counsel objected only on <u>Daubert</u> and hearsay grounds. Aplt. Reply Br. (12-8019) 16.

The evidence about which Mr. Ordaz complains was relevant to the formation and structure of the conspiracy, and we find no abuse of discretion in the district court's decision. See <u>United States v. Sloan</u>, 65 F.3d 149, 151 (10th Cir. 1995). Detective Gonzalez identified Mr. Ordaz as a member of the Fresno Bulldogs and testified about the nature and identifying characteristics of the organization, including drug distribution. III R. (12-8010) at 1010–16. Other witnesses testified similarly. Insofar as excluding the evidence on Rule 403 grounds, we find no plain error.

Finally, we note that Mr. Ordaz's additional argument that Officer Gonzalez was not offered as an expert but testified as one, is unsupported by the record. Officer Gonzalez testified to his personal observations and provided adequate foundation for them. Such testimony is admissible. See <u>United States v. Zepeda-Lopez</u>, 478 F.3d 1213, 1221–22 (10th Cir. 2007).

F.    <u>Bolstering Claim</u>

Mr. Ordaz next argues that the district court erred in admitting certain testimony of Special Agent Loy Young. In particular, Mr. Ordaz alleges that when Special Agent Young discussed the process for securing a search warrant, the prosecutor improperly bolstered his credibility as a witness by suggesting

there was a prior finding of probable cause.  <u>See</u> Aplt. Br. (12-8019) 41–45

(citing <u>United States v. Francis,</u> 170 F.3d 546, 550 (6th Cir. 1999)).  Again, we

review this with respect to all Defendants.  Because there was no objection below,

we review for plain error.

There is simply nothing in the record to support this claim.  Although Mr.

Ordaz never indicates exactly what language he finds offensive, it appears to be

the following exchange:

> Q:     Describe first the process you go through in obtaining a
>        warrant.
> A:     First, during the investigation you obtain information which
>        you believe will amount to probable cause, so you complete an
>        affidavit of probable cause which is then submitted to a judge
>        for review.  If the judge feels like there's enough information
>        amounting to probable cause, then the judge will authorize the
>        search of a residence or person or vehicle, whatever you're
>        making application to search.

III R. (12-8010) at 906.  Although Mr. Ordaz is correct that improper bolstering

may occur "when the prosecutor implies that the witness's testimony is

corroborated by evidence known to the government but not known to the jury,"

<u>Francis</u>, 170 F.3d at 551, that is not what occurred here.  Special Agent Young's

reference to the fact that a court issued a search warrant does not amount to the

prosecutor improperly vouching for or bolstering his testimony in any way.

G.     <u>Cumulative Error</u>

Finally, Mr. Ordaz argues that he suffers a due process violation as a result

of cumulative error.  In analyzing such a claim, this court aggregates all errors

found to be harmless and analyzes whether their effect as a whole would still be harmless. United States v. Toles, 297 F.3d 959, 972 (10th Cir. 2002). Because this court finds there was no error—harmless, or otherwise—the claim of cumulative error fails. See United States v. Barrett, 496 F.3d 1079, 1121 (10th Cir. 2007).

AFFIRMED. Defendant Renteria's motion to supplement is DENIED as the material was not before the district court.