**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

ROBERT VELASQUEZ,

        Defendant - Appellant.

No. 14-8025
(D.C. Nos. 2:13-CV-00059-NDF and
1:10-CR-00329-NDF-1)
(D. Wyo.)

**ORDER DENYING**
**CERTIFICATE OF APPEALABILITY**[*]

Before **KELLY**, **ANDERSON**, and **BACHARACH**, Circuit Judges.


Petitioner and Appellant, Robert Velasquez, proceeding *pro se*, seeks a

certificate of appealability ("COA") to enable him to appeal the denial of his

petition pursuant to 28 U.S.C. § 2255. Finding that he has failed to establish

entitlement to the issuance of a COA, we deny his request and dismiss this matter.

---

[*]This order is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

On January 12, 2011, a federal grand jury returned a Superseding Indictment charging Mr. Velasquez and several others with: conspiracy to traffic in methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count one); conspiracy to engage in money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(I) and 1956(h) (Count two); unlawful distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count three); and possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (Counts five and six). Mr. Velasquez pled not guilty and proceeded to trial, along with co-defendants, Alex Garcia, Daniel Renteria and Miguel Ordaz.

After a lengthy trial (some five weeks) involving the testimony of thirty witnesses, the jury found him guilty of all counts. On November 16, 2011, Mr. Velasquez filed a motion for a judgment of acquittal pursuant to Fed. R. Crim. P. 29 (subsequently supplemented). On March 2, 2012, the district court entered an order granting the Rule 29 motion with respect to his convictions on Counts five and six (the firearms counts). Mr. Velasquez was then sentenced to 240 months' imprisonment on all counts, to run concurrently, followed by five years of supervised release.

Mr. Velasquez did not appeal his conviction or sentence. His co-defendants did appeal, and our court affirmed their convictions. United States v.

Renteria, 720 F.3d 1245 (10th Cir. 2013).  That decision provides the essential

facts describing the three-year methamphetamine conspiracy at issue in this case:

> Information compiled by law enforcement suggested that several members of a gang from Fresno, California—the Fresno Bulldogs—were living in northern Wyoming and distributing methamphetamine from 2007-2010.  This opinion concerns the trial of four members—Mr. Renteria, Mr. Garcia, Mr. Ordaz, and Robert Velasquez, Jr. (who has not appealed here).  Over the course of five weeks, the jury considered the testimony of thirty witnesses.
>
> Special Agent Michael Hall of the Wyoming Division of Criminal Investigation testified as to how the operation worked. Mr. Ordaz, Mr. Renteria, and Mr. Velasquez would periodically receive methamphetamine from Fresno Bulldog members in California, including Mr. Garcia.  Mr. Velasquez operated mainly out of Cody and Basin, Wyoming while Mr. Ordaz and Mr. Renteria operated mainly around Sheridan.  After selling the drugs, Mr. Velasquez, Mr. Ordaz and Mr. Renteria would wire proceeds to Fresno.  Financial records from Money Gram, Western Union, and Green Dot supported some of these transactions.
>
> California police Detective Ricardo Gonzalez provided identification testimony and explained certain characteristics of the Fresno Bulldogs, having investigated the organization for nine years. He specifically identified Mr. Ordaz as a member of the Fresno Bulldogs, identified photographs of Mr. Renteria, Mr. Ordaz, Mr. Velasquez, and Mr. Garcia, and pointed out various gang-related features in these photographs, including special tattoos, clothing, and hand signals.
>
> Multiple cooperating witnesses testified to their purchases of methamphetamine from Mr. Renteria, Mr. Ordaz, and Mr. Velasquez. [citing testimony from Lisa Riggs, Juan Marquez, Amber Bear and Cilia Downes, all implicating Mr. Velasquez].
>
> The testimony of one cooperating witness was particularly helpful to the prosecution of all Defendants.  Melissa Morgan, one of Mr. Velasquez's girlfriends, explained that Mr. Garcia would periodically send Mr. Velasquez packages that contained candles.

-3-

The bottoms of the candles were dug out and contained at least an ounce of methamphetamine each. She described how Mr. Velasquez would remove the methamphetamine, cut it, and then repackage it for sale. She also testified about multiple trips she took with Mr. Velasquez to meet with Mr. Ordaz and Mr. Renteria and pick up methamphetamine. Mr. Ordaz and Mr. Renteria likewise traveled on multiple occasions to visit Mr. Velasquez in Basin and Cody and deliver methamphetamine. Ms. Morgan also once accompanied Mr. Velasquez to Fresno where she met Mr. Garcia, and she once wired drug proceeds to him and his girlfriend.

Ms. Morgan's brother, John Morgan, testified that Mr. Velasquez supplied him with methamphetamine and that Mr. Velasquez told him that one of his sources was Mr. Garcia. Mr. Morgan also testified that once Mr. Velasquez was incarcerated, Mr. Renteria became his supplier. Originally, Mr. Renteria provided the methamphetamine in ounce quantities, but when Mr. Morgan could not move it quickly enough, Mr. Morgan began purchasing it in quarter-ounce and half-ounce quantities.

Two of Mr. Renteria's girlfriends corroborated much of Ms. Morgan's testimony regarding Mr. Velasquez and Mr. Renteria's relationship. Candice Kysar testified that Mr. Renteria's only source of income was from drug sales and that she saw Mr. Renteria cut, repackage, and sell methamphetamine, usually in 3.5 gram amounts, nearly every day. Danni Fox testified that she saw Mr. Renteria receive packages of methamphetamine and cut it before selling it, and that she helped wire large amounts of money to California, money which Mr. Renteria claimed was for his children.

Renteria, 720 F.3d at 1249-50 (record citations omitted).

Mr. Velasquez timely filed the instant 28 U.S.C. § 2255 petition, asserting

two issues: (1) the prosecution engaged in misconduct relating to the testimony at

trial of Melissa and John Morgan regarding their anticipated sentences as

compared with the sentences they actually received; and (2) his trial counsel was

ineffective because he failed to do an independent investigation, was unprepared,

and failed to identify a viable defense; he failed to properly cross-examine witnesses at trial; and he deliberately undermined the case in order to form a strategic alliance with the Government. The district court rejected each argument on its merits, after a careful and thorough examination of the record and applicable legal authority. The court also denied Mr. Velasquez's request for an evidentiary hearing, finding that the "files and record in this case conclusively establish that Velasquez is not entitled to any relief." Order at 22-23; R. Vol. 1 at 112-13. The court then denied Mr. Velasquez a COA. This request for a COA followed.

## DISCUSSION

The denial of a motion for relief under § 2255 can be appealed only if a COA is issued. 28 U.S.C. § 2253(c)(1)(B). A COA may not issue under § 2253(c)(1) unless "the applicant has made a substantial showing of the denial of a constitutional right." Id. § 2253(c)(2). This standard requires "a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." See Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quotation marks omitted).

Furthermore, "[s]ection 2255 motions are not available to test the legality of matters which should have been raised on direct appeal." United States v. Warner, 23 F.3d 287, 291 (10th Cir. 1994). "A defendant's failure to present an issue on direct appeal bars him from raising the issues in his § 2255 motion, unless he can show cause excusing his procedural default and actual prejudice resulting from the errors of which he complains, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed." Id. Additionally, we "may raise this procedural bar sua sponte but must afford the movant an opportunity to respond to the defense." Id. Nonetheless, even where the court has the power to raise such procedural bar defenses, we have counseled that it "does not mean that it *must* raise them sua sponte," or that it "ordinarily *should* raise" them sua sponte. Hines v. United States, 971 F.2d 506, 509 (10th Cir. 1992).

As indicated above, Mr. Velasquez filed no direct appeal at all. The district court evidently determined it unnecessary to afford Mr. Velasquez the opportunity to respond to a procedural bar defense, and instead addressed (and rejected) his arguments on their merits. We therefore consider that decision, in light of our COA standards.

As stated, Mr. Velasquez raised two broad issues: prosecutorial misconduct and ineffective assistance of trial counsel. We consider them in turn.

## I.  Prosecutorial Misconduct

Mr. Velasquez claims that the Government failed to disclose alleged secret deals between the Government and Melissa Morgan ("M. Morgan") and John Morgan ("J. Morgan") regarding the term of punishment they would ultimately receive at sentencing.  The district court found this argument "without support in the record."  Order at 8; R. Vol. 1 at 98.

A review of the record shows that the district court's denial of Mr. Velasquez's § 2255 motion on this point is not reasonably debatable.  As the court noted, a claim that the Government has purposely suppressed significant impeachment evidence concerning its witnesses invokes the principles of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

Mr. Velasquez's co-defendants made this same argument in their direct appeal.  We described the argument as follows:

> Mr. Renteria maintains that the government made two undisclosed promises of leniency to witnesses Melissa Morgan and John Morgan in return for their testimony.  He argues that the government's failure to disclose these alleged subrosa agreements violates <u>Giglio</u> and warrants a new trial. . . .
>
> Ms. Morgan testified that she would receive a sentence of eight to ten years' incarceration pursuant to a plea in Wyoming state court and that her testimony against Mr. Renteria would not change that sentence.  Mr. Renteria's brief indicates, without record support, that instead Ms. Morgan has received a sentence of four to six years.
>
> Mr. Morgan testified that he would receive a sentence of fifteen years pursuant to a plea in federal court and that he was not going to receive a downward departure or any additional

-7-

consideration for his testimony at trial. Again in briefing and again without record support, Mr. Renteria alleges that Mr. Morgan's sentence was also reduced from fifteen to ten years.

These lower-than-expected sentences might indicate that the government had an agreement with the witnesses that went undisclosed.

Renteria, 720 F.3d at 1251-52.

We resolved this issue in Mr. Velasquez's co-defendants' case by deeming it waived because it was not raised in the district court, and there were "no factual or legal determinations on the matter for us to review." Id. at 1252. That is not the case here, as Mr. Velasquez raised this issue before the district court and the court rejected it on its merits, after an extensive examination of the record.

The district court began by examining the plea agreement signed by J. Morgan prior to the trial of Mr. Velasquez and his co-defendants. That plea agreement provided that J. Morgan understood that "the United States does not intend on making any motions for a downward departure pursuant to U.S.S.G. § 5K1.1 (or 18 U.S.C. § 3553(e), or [Fed. R. Crim. P.]35(b)); and, as a result, the minimum statutory sentence he would receive would be 15 years." Order at 9; R. Vol. 1 at 99 (quoting John Morgan Plea Agreement, Doc. 205). The agreement further provided that it "does not prevent the Defendant from asking the court for a further downward departure at the time of sentencing." Id. Accordingly, J. Morgan testified at Mr. Velasquez's trial that he "understood there would be no

downward departure filed on his behalf and his sentence would be fifteen years."

Id.

When J. Morgan appeared for his sentencing, after completion of the trial of Mr. Velasquez and his co-defendants, J. Morgan's counsel asked for a sentence below the mandatory minimum of fifteen years. After lengthy discussion, and a continuance, the Government ultimately did file a motion for a downward departure, but only to fifteen years. The court ultimately sentenced J. Morgan to a sentence of 120 months. The district court below stated:

> There is nothing in the record to suggest the Government had any secret deal with J. Morgan. Rather the Government was initially adamant it would not consider any motion for sentence reduction because of concerns that it would contradict statements both the Government and J. Morgan made at the trial in this case. The Court itself noted that there was no secret deal at the December 7, 2011 hearing [on J. Morgan's sentencing].

> Additionally, the purpose of the Government's motion for downward departure was to allow the Court to depart down from the guideline sentencing range of 210-262 months, to the 180 months contemplated by the Plea Agreement. The Government continued through its motion and through sentencing to argue for a sentence of 180 months as contemplated by the Plea Agreement.

> <u>There is nothing in the record to suggest the Government engaged in any *Brady/Giglio* violations related to J. Morgan's testimony and later reduction in sentencing. The Court finds this claim lacks merit</u>.

Order at 14; R. Vol. 1 at 104 (emphasis added). No reasonable jurist could debate the propriety of that analysis and discussion. While Mr. Velasquez continues (in his application for a COA and Opening Brief on appeal) to assert that he has

identified witnesses who would testify at an evidentiary hearing, he still fails to specifically identify any person or record item to support his claim that secret deals existed. He does not name particular persons or evidentiary materials to be unveiled at an evidentiary hearing.

The district court then considered whether there was any Brady/Giglio violation in connection with the testimony of J. Morgan's sister, M. Morgan (who was also a girlfriend of Mr. Velasquez). It again concluded "there is no evidence the Government had a secret agreement with M. Morgan." Order at 15; R. Vol. 1 at 105. As it explained:

> According to M. Morgan's testimony at trial, her state plea agreement required her to cooperate with the United States at trial and that in exchange she would avoid federal prosecution and serve a state prison sentence of eight to ten years.
>
> According to attachments to Velasquez's co-defendant Renteria's appellate filings, M. Morgan was ultimately sentenced to a term of four to six years, [as] opposed to eight to ten years. There is nothing in the record to indicate why the state prosecutor recommended a lower sentence or that M. Morgan's lower than expected sentence was a product of improper Government conduct. There does not appear to be any explanation for the reduction of the sentence, making it impossible for this Court to know why the state court imposed the sentence it did. However, there is no evidence the lower sentence was the product of any improper, secret deal on behalf of the Government regarding her cooperation.

Id. We similarly discern no basis on which a reasonable jurist could debate the propriety of that decision. We will issue no COA on the claimed prosecutorial misconduct relating to Brady/Giglio.[1]

## II. Ineffective Assistance of Counsel

Mr. Velasquez's second claim involves several instances of claimed ineffective assistance of his trial counsel. He asserts three specific claims of ineffectiveness: failure to conduct an independent investigation and develop a viable defense; failure to effectively cross-examine witnesses; and pursuit of an unlawful alliance or conspiracy with the Government to frame him. The district court rejected these claims on their merits.

As has been repeatedly stated, under the Supreme Court's two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984), an ineffective assistance of counsel claim requires a showing (1) "that counsel's representation fell below an objective standard of reasonableness" and (2) "that the deficient performance

---

[1]The district court further noted that:

> even if Velasquez had some evidence of a Brady/Giglio violation, Velasquez could not show that it materially compromised his defense. Both the Morgans were subject to withering cross examination. Both had significant prior felonies and they were both accused of concocting their testimony to cover up their distribution activities. Additionally, there was significant other testimony to convict Velasquez provided by other witnesses . . . . Therefore, any suppression of the alleged 'side deals' would not have materially affected the outcome of Velasquez's case.

Order at16; R. Vol. 1 at 106.

prejudiced the defense." Id. at 687-88. "[R]eview of counsel's performance" under Strickland's first prong is "highly deferential." Byrd v. Workman, 645 F.3d 1159, 1168 (10th Cir. 2011).

The district court applied those standards to Mr. Velasquez's claims of ineffectiveness. The court stated that he "fails to state what viable defense his counsel could have raised" and he "fails to provide any names of people who his counsel would have contacted to provide a viable defense." Order at 16; R. Vol. 1 at 106. And aside from the Morgans, Mr. Velasquez identifies no witnesses who should have been more vigorously cross-examined; with regard to the Morgans, the district court points out that Mr. Velasquez's counsel "extensively cross-examined J. Morgan" and that "[t]here are no facts to support Velasquez's claim that his counsel was ineffective in cross-examining M. Morgan." Id. at 20-21; R. Vol. 1 at 110-11. Mr. Velasquez states nothing in his application for a COA and his Opening Brief to refute the district court's conclusions, or explain why an evidentiary hearing would help his cause.

In short, no reasonable jurist could debate the correctness of the district court's analysis and conclusions. Additionally, the court did not abuse its discretion in denying an evidentiary hearing. See United States v. Flood, 713 F.3d 1281, 1290 (10th Cir. 2013) ("We review the district court's denial of an evidentiary hearing for abuse of discretion."); United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1988) ("We do not agree that an evidentiary hearing is

-12-

required where the district court finds the case record conclusively shows the prisoner is entitled to no relief.").

## CONCLUSION

For the foregoing reasons, we DENY Mr. Velasquez a COA and DISMISS this matter.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge