**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 3, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellant,

v.

      No. 12-4169

PHILBERT RENTZ,

      Defendant-Appellee.

---

**ON REHEARING EN BANC**

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:11-CR-00771-CW-PMW-1)**

---

Diana Hagen, Assistant United States Attorney (Carlie Christensen, Acting United States Attorney, with her on the brief), Salt Lake City, Utah, for Plaintiff-Appellant.

Jeremy M. Delicino, Delicino Lorenzo, LLC (Elizabeth A. Lorenzo, Delicino Lorenzo, LLC, Salt Lake City, Utah, and Stephen R. McCaughey of Salt Lake City, Utah, with him on the brief), for Defendant-Appellee.

---

Before **BRISCOE**, Chief Judge, **KELLY**, **LUCERO**, **HARTZ**, **TYMKOVICH,** **GORSUCH**, **HOLMES**, **MATHESON**, **BACHARACH**, **PHILLIPS**, and **MORITZ**, Circuit Judges.[*]

---

    [*] Judge McHugh took no part in the consideration or decision of this case.

**GORSUCH**, Circuit Judge, joined by **LUCERO**, **TYMKOVICH**, **HOLMES**, **BACHARACH**, and **MORITZ**, Circuit Judges.

Few statutes have proven as enigmatic as 18 U.S.C. § 924(c). Everyone knows that, generally speaking, the statute imposes heightened penalties on those who use guns to commit violent crimes or drug offenses. But the details are full of devils. Originally passed in 1968, today the statute says that "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime . . . be sentenced to a term of imprisonment of not less than 5 years." 18 U.S.C. § 924(c)(1)(A). That bramble of prepositional phrases may excite the grammar teacher but it's certainly kept the federal courts busy. What does it mean to "use" a gun "during and in relation to" a drug trafficking offense? The question rattled around for years until *Bailey v. United States*, 516 U.S. 137 (1995), and even now isn't fully resolved. What does and doesn't qualify as a "crime of violence"? The better part of five decades after the statute's enactment and courts are still struggling to say. *Cf. United States v. Castleman*, 134 S. Ct. 1405 (2014); *United States v. Serafin*, 562 F.3d 1105, 1110-14 (10th Cir. 2009). And then there's the question posed by this case: What is the statute's proper unit of prosecution? The parties before us agree that Philbert Rentz "used" a gun only once but did so

"during and in relation to" two separate "crimes of violence" — by firing a single shot that hit and injured one victim but then managed to strike and kill another. In circumstances like these, does the statute permit the government to charge one violation or two?

This circuit and virtually every other has held that for each separate § 924(c)(1)(A) charge it pursues the government must prove a separate crime of violence or drug trafficking crime.[1] The government admits this burden and no one asks us to revisit it. But what about the statute's discussion of uses, carries, and possessions? Must the government also prove a separate one of those for each separate § 924(c)(1)(A) charge it brings? Though they vary in their approach to the question, the Second, Fifth, Seventh, and D.C. Circuits all seem to suggest the answer is yes, while the Eighth Circuit has (but only arguably, as

---

[1] *See, e.g.*, *United States v. Lindsay*, 985 F.2d 666, 672-74 (2d Cir. 1993); *United States v. Diaz*, 592 F.3d 467, 470-75 (3d Cir. 2010); *United States v. Privette*, 947 F.2d 1259, 1262-63 (5th Cir. 1991); *United States v. Henry*, 878 F.2d 937, 942-45 (6th Cir. 1989); *United States v. Cappas*, 29 F.3d 1187, 1189 (7th Cir. 1994); *United States v. Smith*, 924 F.2d 889, 894-95 (9th Cir. 1991); *United States v. Henning*, 906 F.2d 1392, 1398-99 (10th Cir. 1990); *United States v. Ross*, 920 F.2d 1530, 1538-39 (10th Cir. 1990); *United States v. Johnson*, 977 F.2d 1369, 1377 (10th Cir. 1992); *United States v. Hamilton*, 953 F.2d 1344, 1345-46 (11th Cir. 1992). *But see United States v. Camps*, 32 F.3d 102, 106-09 & n.9 (4th Cir. 1994) (suggesting otherwise but also suggesting "that a defendant may not be punished multiple times for *simultaneous* firearm use or carriage" no matter how many predicate offenses are involved).

we shall see) said no.[2]  We agreed to hear this case *en banc* to answer the question for ourselves.

The answer is consequential.  If Mr. Rentz properly faces only a single § 924(c)(1)(A) charge he could receive between 5 and 10 years in prison for it. *See* 18 U.S.C. § 924(c)(1)(A)(i)-(iii).  But if, as the government contends, it may bring a second § 924(c)(1)(A) charge premised on his single use of a firearm, Mr. Rentz could face a second mandatory sentence of 25 years to life — time he must serve in addition to, not instead of, the years he must serve for his initial § 924(c)(1)(A) conviction.  *See id.* § 924(c)(1)(C)(i)-(ii), (c)(1)(D)(ii).  Neither, of course, is that the end of it.  Any and all § 924(c)(1)(A) sentences Mr. Rentz receives must themselves be served consecutively to, not concurrently with, any sentences associated with his underlying crimes of violence (assaulting the first victim, murdering the second).  *See id.* § 924(c)(1)(D)(ii).

Cases like Mr. Rentz's are hardly unusual.  In an age when the manifest of federal criminal offenses stretches ever longer, a parsimonious pleader can easily describe a defendant's single use of a firearm as happening "during and in relation to" multiple qualifying crimes.  Like when a defendant shoots a potential witness against him — committing at once the separate crimes of murder and the

---

[2]  *Compare United States v. Finley*, 245 F.3d 199, 206-08 (2d Cir. 2001); *United States v. Phipps*, 319 F.3d 177, 186-89 (5th Cir. 2003); *United States v. Cureton*, 739 F.3d 1032, 1043 (7th Cir. 2014); *United States v. Wilson*, 160 F.3d 732, 748-49 (D.C. Cir. 1998), *with United States v. Sandstrom*, 594 F.3d 634, 656-59 (8th Cir. 2010).

killing of a witness. *Wilson*, 160 F.3d at 736. Or when a defendant brandishes a weapon to induce his victim to surrender a car and come with him — committing in the process the crimes of car-jacking and kidnapping. *Phipps*, 319 F.3d at 180-81. Or when a defendant points a gun at his victim and demands that she call relatives for cash — giving rise to both an unlawful ransom demand and attempted extortion. *Cureton*, 739 F.3d at 1035-37. In all these circumstances and many more besides, deciding what is required to prove each § 924(c)(1)(A) charge matters greatly, determining whether the defendant will face five or ten years in prison or more like thirty years to life (all, again, on top of the time he must serve for the underlying predicate offenses).

This court has not yet clearly decided whether a separate use, carry, or possession is necessary to support each count of conviction. To be sure, panels have touched on tangential matters. In *Blockburger v. United States*, the Supreme Court held that the double jeopardy clause prohibits punishing a defendant for the same conduct under "*two distinct statutory provisions*" unless "each provision requires proof of a fact which the other does not." 284 U.S. 299, 304 (1932) (emphasis added). Analogizing to *Blockburger*, some defendants have sought to suggest that a double jeopardy problem also arises when the government seeks to punish them multiple times under a *single statutory provision* like § 924(c)(1)(A) for a single use of a gun resulting in two predicate crimes. Panels of this court have rejected appeals along these lines, reasoning that the defendants at hand

were charged with two different predicate offenses and that each charged predicate offense required proof of a fact that the other did not.  But whether and how multiple punishments under a single statutory provision like § 924(c)(1)(A) could ever pose a *Blockburger* double jeopardy problem are questions that simply aren't presented in this appeal.  *See Sanabria v. United States*, 437 U.S. 54, 70 n.24 (1978) ("Because only a single violation of a single statute is at issue here, we do not analyze this case under the [*Blockburger*] same-evidence test").[3]

Instead, the question presented by this appeal is whether, as a matter of statutory interpretation, § 924(c)(1)(A) authorizes multiple charges when everyone admits there's only a single use, carry, or possession.  Ours is a unit of prosecution case, an inquiry into the "minimum amount of activity for which criminal liability attaches" for each charge under a single criminal statute. *Cureton*, 739 F.3d at 1041 (internal quotation marks omitted); *see also Callanan v. United States*, 364 U.S. 587, 597 (1961) (unit of prosecution questions concern "whether conduct constitutes one or several violations of a single statutory

---

[3] For examples of panel decisions rejecting analogies to *Blockburger*, see, e.g., *United States v. Chalan*, 812 F.2d 1302, 1315-17 (10th Cir. 1987); *United State v. Abreu*, 962 F.2d 1425, 1433 (10th Cir. 1992); *United States v. Floyd*, 81 F.3d 1517, 1527 (10th Cir. 1996); *United States v. Renteria*, 720 F.3d 1245, 1256 (10th Cir. 2013).  Other panel decisions of this court have purported to address the meaning of § 924(c)(1)(A) itself but often in the context of plain error review and then only briefly and still influenced by a sort of analogy to *Blockburger*'s double jeopardy inquiry.  *See, e.g.*, *United States v. Malone*, 222 F.3d 1286, 1292-94 (10th Cir. 2000); *United States v. Barrett*, 496 F.3d 1079, 1095-96 (10th Cir. 2007).

provision"). And, as other circuits have recognized, "[t]he absence of a [*Blockburger*] Double Jeopardy problem does not end [this] inquiry." *Cureton*, 739 F.3d at 1040; *see also Phipps*, 319 F.3d at 184, 188 n.10 (Fifth Circuit noting that neither its previous double jeopardy cases nor ours "address[es] the precise statutory question whether § 924(c)(1) authorizes multiple convictions for a single use of a single firearm based on multiple predicate offenses").[4]

When seeking a statute's unit of prosecution — when asking what the minimum amount of activity a defendant must undertake, what he must do, to commit each new and independent violation of a criminal statute — the feature that naturally draws our immediate attention is the statute's verb. This comes as no surprise, of course, as the verb supplies the action or doing part of most any sentence, statutory or otherwise. *See United States v. Rodriguez-Moreno*, 526 U.S. 275, 279-80 (1999) (in deciding what the statute defines as an offense, the "'verb test' certainly has value as an interpretive tool"); *The Chicago Manual of Style* § 5.97 (15th ed. 2003). True, in the business of statutory interpretation we

---

[4] That's not to suggest that a decision about the proper unit of prosecution as a matter of statutory interpretation never bears constitutional double jeopardy implications. It goes without saying, for example, that once a defendant is acquitted of an offense he can't be retried on the same offense. So deciding as a matter of statutory interpretation the scope of what it takes to prove one or more offenses under a single statute naturally may affect whether retrial is or isn't constitutionally permissible in particular cases. *See, e.g., Sanabria*, 437 U.S. at 69-70. Still and again, though, our inquiry in this appeal isn't into potential knock-on double jeopardy consequences; it is into the meaning of the statute itself.

do not always bow to linguistic rules.  A court's job, after all, is to discern the statute's meaning not grade its grammar, and sometimes a law's meaning can be clear even when the grammar's downright awful.  But until a clue emerges suggesting otherwise, it's not unreasonable to think that Congress used the English language according to its conventions.  And in § 924(c)(1)(A) we find three relevant verbs:  uses, carries, and possesses.  This alone supplies some evidence that each § 924(c)(1)(A) charge must involve an independent act of using, carrying, or possessing.  After all, if a law's verb says it's a crime to *kill* someone, we usually think a defendant must *kill* more than one person to be found guilty of more than one offense.  That's the action necessary to support each and every unit of prosecution.  Section 924(c)(1)(A)'s verbs make it a crime to use, carry, or possess a firearm in certain circumstances.  So reading § 924(c)(1)(A) like our homicide statute and in accord with the normal rules of statutory (and sentence) construction goes some way to suggest that every new conviction requires a new act falling into one of those three categories.

Another linguistic clue points in the same direction.  Section 924(c)(1)(A) doesn't prohibit using or carrying or possessing a gun in isolation.  Nor could it for guns often may be lawfully used, carried, or possessed:  the Constitution guarantees as much.  Instead, the statute prohibits using or carrying a gun *during and in relation to any crime of violence or drug trafficking crime*, or possessing a gun *in furtherance of any such crime.*  These adverbial prepositional phrases

modify the verbs uses, carries, and possesses.  *See The Chicago Manual of Style*, *supra*, §§ 5.143, 5.166; Bryan A. Garner, *Garner's Modern American Usage* 879, 911 (3d ed. 2009).  They tell us *which* acts of using, carrying, or possessing Congress sought to punish — explaining that the statute doesn't seek to make illegal all such acts, only the narrower subset the phrases specify.  Simplified somewhat, the language looks like this:



Visualized this way it's hard to see how the total number of charges might ever exceed the number of uses, carries, or possessions.  Just as you can't *throw* more touchdowns *during the fourth quarter* than the total number of times you have *thrown* a touchdown, you cannot *use* a firearm *during and in relation to crimes of violence* more than the total number of times you have *used* a firearm. So it is we now have in hand a pair of textual clues, clues suggesting that each § 924(c)(1)(A) charge must involve *both* an act of using, carrying, or possessing

*and* that such an act must come during and in relation to (or in furtherance of) a qualifying crime.

Verbs and adverbial modifiers usually work in exactly this way. Consider another example. Imagine Congress passed a statute that in terms of its syntax is nearly identical to § 924(c)(1)(A), a statute imposing special penalties for "any person who, during a holiday, murders another." In a year when Hanukkah and Christmas happen to fall on the same day, a man is arrested for shooting a single victim. Does the statute allow the government to bring *two* charges because of the calendar's curiosities? Without some further direction from the legislature, we wouldn't think so. We wouldn't because *murders* is the statute's operative verb and it focuses our attention on how many times the defendant performed that act — not on how many holidays that act happened to fall. The adverbial prepositional phrase acts only to impose additional limits on the availability of a charge, beyond what the verb already does, suggesting that for each charge there must be *both* a murder (use) *and* one that occurs during a holiday (during and in relation to any crime of violence or drug trafficking crime).

While this reading of the statute — like most good ones — flows from plain old grade school grammar, the government's contrary interpretation requires some sophisticated syntactical somersaults. To bring an initial § 924(c)(1)(A) charge the government admits it must prove an act of using, carrying, or possessing that comes during and in relation to (or in furtherance of) a qualifying

crime.  But after that, the government says, it should be entitled to pile on additional § 924(c)(1)(A) charges without proving any further uses, carries, or possessions.  A single use, carry, or possession can thus give rise to one or one hundred counts.  The only limiting factor the government sees is the number of qualifying crimes the prosecutor can describe as having occurred during and in relation to (or in furtherance of) that initial act of using, carrying, or possessing.  Under the government's reading, an act of using, carrying, or possessing is part of the government's burden for the first conviction.  The statute's verb counts then.  But the government would have us ignore that requirement for any additional charges.  In later charges our focus would be limited myopically to the sentence's adverbial phrases without even a stolen glance at the verbs those phrases modify.  A sort of appearing and then disappearing elemental burden, a world in which verbs vanish but their modifiers float freely and commandingly alone.  We don't doubt that Congress could have found the words to accomplish this result— or even that it could have done so pretty easily.  But as it stands, we just don't see anything in § 924(c)(1)(A) that obviously does so much.[5]

---

[5]  Our concurring colleague Judge Matheson notes that folded within the statute's adverbial prepositional phrase lies the word "any":  the statute penalizes using, carrying, or possessing a gun during "any" crime of violence or drug trafficking crime.  Our colleague considers the possibility this word might help the government's cause, but ultimately concludes that if it does help it doesn't help much.  Matheson Concurrence at 9-12.  We agree for reasons by now clear.  The word "any" doesn't float freely — say, punishing "any" crime of violence or drug trafficking crime or "any" use of a gun.  Instead, it appears in an adverbial

(continued...)

Looking beyond the specific language Congress used in § 924(c)(1)(A) to take in a broader view of the statute does nothing to alter our initial impressions. In § 924(c)(1)(C) we encounter the punishments Congress specified for second and subsequent convictions, a provision that speaks directly to cases involving multiple lawful convictions and so might naturally appear to be a source of guidance. As it turns out, it, too, contains nothing to suggest that the government's burden morphs between an initial charge and later ones, no hint that our focus shifts from the verbs and their modifiers to their modifiers alone. Instead, the subsection simply specifies certain punishments for a "second or subsequent conviction under this subsection" — language that, if anything, seems to anticipate that the government's burden remains constant between initial and subsequent convictions.

Neither is this the only clue § 924(c)(1)(C) yields. The provision proceeds to impose mandatory sentences for second convictions many times higher than those associated with first convictions. As we've seen, a defendant can expect to receive between 25 years and life for a second conviction compared with between 5 and 10 years for most initial convictions. This massive sentencing differential

---

[5](...continued) prepositional phrase whose job is to narrow the universe of uses, carries, or possessions criminalized by § 924(c), focusing our attention on only those uses, carries, or possessions that occur during "any" of certain specified conditions. So "any" doesn't tell us anything about the number of uses, carries, or possessions required to justify each independent charge — just about the sorts of uses, carries, or possessions that violate the statute.

suggests a legislative judgment that second violations are something different in kind from initial violations. Such a difference is obvious enough if a second conviction requires the defendant to make a second choice to use, carry, or possess a gun to further a crime — say, by firing a gun at different people on different occasions. In cases like that, the defendant hasn't made one intentionally bad decision but two. But if a second conviction doesn't require a second blameworthy choice to use, carry, or possess a firearm in aid of a predicate act, the logic behind the leap in punishment becomes less apparent. For, as we've seen, a single shot can be easily described as assault and witness tampering of the same victim; a single brandishing can be both kidnapping and robbery of a lone victim; the examples could go on and on. The severity of the punishment associated with second convictions seems to suggest that Congress saw a second charge less as some sort of discretionary pleading choice or a nearly foregone conclusion in every case and more a highly unusual act, one wholly different from and more reprehensible than an initial violation. Yet it's pretty hard to reconcile the government's interpretation with this textually manifest judgment. *See, e.g.*, *Cureton*, 739 F.3d at 1045 (describing the "statute's purpose" as punishing "the *choice* to use or possess a firearm in committing a predicate offense") (emphasis added); *see also Phipps*, 319 F.3d at 187 (the

- 13 -

statute is "aimed . . . at the *choice* to use a firearm during and in relation to a

predicate offense") (emphasis added).[6]

The government replies that the legislative history compels its contrary

understanding of the statute.  This may be a shaky enough claim on which to

stake any statutory interpretation in the face of adverse textual evidence.  But

however that may be, the government's legislative history proves nothing even on

its own terms.  The government points only to a single paragraph in a committee

report prepared in 1984 when Congress amended the statute.  That paragraph says

just this:

> The Committee has concluded that subsection 924(c)(1) should be
> completely revised to ensure that all persons who commit Federal
> crimes of violence, including those crimes set forth in statutes which
> already provide for enhanced sentences for their commission with a
> dangerous weapon, receive a mandatory sentence, without the
> possibility of the sentence being made to run concurrently with that
> for the underlying offense or for any other crime and without the
> possibility of a probationary sentence or parole.

S. Rep. No. 98-225, at 313 (1983) (footnote omitted), *reprinted in* 1984

U.S.C.C.A.N. 3182, 3491.  As this language clearly explains, the 1984

amendments added a new statutory subsection (§ 924(c)(1)(D)(ii)) to ensure that

---

[6] Judge Matheson examines a separate sentencing provision that applies when the gun used is a machine gun (18 U.S.C. § 924(c)(1)(B)(ii)) but fails to find any definitive support there for the government either, and again we agree. *See* Matheson Concurrence at 10-12.  The fact that a particular sentencing enhancement follows if you use, carry, or possess a machine gun during or in relation to a crime of violence or drug trafficking crime doesn't speak one way or the other to the question whether an independent use, carry, or possession is required for each such special enhancement.

§ 924(c)(1)(A) sentences are served consecutively to, not concurrently with, sentences for the defendant's underlying offense. Neither the amendment effecting that result nor the committee report discussing it had any occasion to address the statute's proper unit of prosecution — or even the language of § 924(c)(1)(A) itself.

The government replies that the phrase "who commit Federal crimes of violence" proves that the number of convictions depends only on the number of crimes of violence a prosecutor can charge. But here (again) the government would have us read into a sentence fragment a good deal more than it can bear. Under *any* plausible view about the proper unit of prosecution a defendant convicted under § 924(c)(1)(A) has "commit[ted] a Federal crime[] of violence" and will receive a sentence consecutive to his underlying crime of violence sentence, just as the committee report says he should. Both Mr. Rentz and the government agree on that much. The question we face in this case is how many § 924(c)(1)(A) sentences Mr. Rentz and those like him must face. And that's a question the 1984 amendment and the government's legislative history clipping simply don't address.

Perhaps the government means to suggest that because the 1984 amendment and its legislative history display an intent to punish harshly in certain respects (mandating consecutive rather than concurrent sentences) we should interpret the statute harshly in other respects too (including when it comes to defining the unit

of prosecution).  But if that's the argument, it's a poor one.  Legislation is compromise and it's rare to find a statute that pursues a single purpose unrelentingly.  Assuming that *whatever* seems to further a statute's perceived purpose must be the law commits the fallacy of overgeneralization.  *See United States v. Smith*, 756 F.3d 1179, 1191 (10th Cir. 2014); *Bd. of Governors v. Dimension Fin. Corp.,* 474 U.S. 361, 374 (1986) ("Invocation of the 'plain purpose' of legislation at the expense of the terms of the statute itself . . . prevents the effectuation of congressional intent.").  Indeed, from the fact that Congress wished § 924(c)(1)(A) sentences to run consecutively rather than concurrently one could as easily draw the very opposite conclusion the government does — surmising that Congress thought consecutive sentences appropriate precisely because each charge arises from something as weighty as an independent intentional choice to use, carry, or possess a gun.  Certainly other circuits that have scrutinized the legislative history have found it somewhere between utterly unfathomable and modestly more helpful to the defense than the government.  *See, e.g.*, *Phipps*, 319 F.3d at 187; *United States v. Anderson*, 59 F.3d 1323, 1327-28 (D.C. Cir. 1995) (*en banc*).

This observation leads to another.  To the extent any ambiguity remains at this point about the meaning of § 924(c)(1)(A) — after we have exhausted all the evidence of congressional meaning identified by the parties — we don't default to the most severe possible interpretation of the statute but to the rule of lenity.

*United States v. Bass*, 404 U.S. 336, 347-49 (1971).  Our job is always in the first instance to follow Congress's directions.  But if those directions are unclear, the tie goes to the presumptively free citizen and not the prosecutor.  Here that means the government must prove both a use, carry, or possession as well as a qualifying crime.  The rule of lenity seeks to ensure legislatures, not prosecutors, decide the circumstances when people may be sent to prison.  It seeks to ensure, too, that if a legislature wishes to attach criminal consequences to certain conduct — to deprive persons of their property, liberty, or even lives — it provides fair warning.  Of course, Congress is free if it wishes to amend § 924(c)(1)(A) to state that a second conviction doesn't require a second use, carry, or possession.  But unless and until it does, we will not relegate men and women to prison (or to decades more time in prison) because they did something that might — or might not — have amounted to a violation of the law as enacted.  "In our legal order it is not the job of independent courts to bend ambiguous statutory subsections in procrustean ways to fit the prosecutor's bill."  *Smith*, 756 F.3d at 1191; *see also* Orin S. Kerr, *A Rule of Lenity for National Security Surveillance Law*, 100 Va. L. Rev. 1513, 1533-34 (2014).

Tellingly we think, the Supreme Court has applied the rule of lenity in highly similar circumstances.  In *Bell v. United States*, 349 U.S. 81 (1955), the Court faced a statute establishing federal penalties for "[w]hoever knowingly transports in interstate or foreign commerce . . . any woman or girl for the

purpose of prostitution." The question presented was whether a single transportation of multiple women amounted to one violation of the statute or many. The Court held the statute ambiguous, applied the rule of lenity, and ruled that a single violation had occurred. In *Ladner v. United States*, 358 U.S. 169 (1958), the statute at issue prohibited assaults against law enforcement officers. The Court faced a single assault (a single discharge of a weapon) that happened to hurt two officers. Here again the Court found ambiguity as to the proper unit of prosecution, applied the rule of lenity, and held one violation existed. We fail to see how the Supreme Court could have found for the defendants in *Bell* and *Ladner* and this court might yet fairly find against Mr. Rentz.

If anything, the case for lenity seems even more persuasive in our case than it was in *Bell* or *Ladner*. While the government tries to persuade this *en banc* court that the number of § 924(c)(1)(A) charges depends only on the number of predicate crimes it can conjure and not the number of uses it can prove, in another *en banc* case before another circuit court the government argued exactly the other side of the debate. In *Anderson* the government contended that the number of uses alone, not the number of predicate crimes, limits the number of available § 924(c)(1)(A) charges. *See* 59 F.3d at 1325. In highlighting this pretty-difficult-to-ignore flip-flop we do not mean to suggest the government or any other party isn't permitted to amend its view over time. The willingness to change your mind is often an admirable trait. Neither do we mean to suggest that the existence of

different views about how best to untangle a statute's knots necessarily and by itself proves the law is ambiguous. Instead, we suggest only that if a federal criminal statute is so enigmatic that the government has experienced such difficulty settling on its meaning maybe that goes some way toward showing that ordinary citizens lack reasonable notice about its meaning and the time has come to let lenity in.

Most other circuits to have come this way before us have reached the same destination we do. *See, e.g.*, *Finley*, 245 F.3d at 206; *Cureton*, 739 F.3d at 1044; *Wilson*, 160 F.3d at 749-50; *Phipps*, 319 F.3d at 185-88. Neither does the one circuit that most apparently seems to have gone a different way (the Eighth) cause us to doubt our path. In fact, it's not even clear that court would disagree with anything we've said. In *Sandstrom*, the Eighth Circuit did allow multiple charges premised on a single gun use to proceed under § 924(c)(1)(A). But it did so only after relying on our own panel decisions rejecting *Blockburger*-type double jeopardy challenges to multiple § 924(c)(1)(A) convictions. As we've seen, those cases do not directly answer the question what, as a matter of statutory interpretation, the government must prove for each successive charge under a single statute. *See supra* note 3. When presented with that question squarely, it

remains entirely possible the Eighth Circuit would agree with us and most everyone else.[7]

We don't mean to suggest we think we've somehow cracked § 924(c)'s code. Even now plenty of hard questions remain. Not least this: what exactly suffices to constitute a unique and independent use, carry, or possession sufficient to support a second or successive § 924(c)(1)(A) charge? In light of our holding that each charge requires an independent use, carry, or possession, that question will no doubt take on particular prominence in the future. We fully expect parties to dispute when one use, carry, or possession ends and another begins. Some courts already do. *Compare Finley*, 245 F.3d at 206-08 (suggesting that a single

---

[7] The government says the case for lenity so many circuits have found persuasive should be reexamined in light of *Rosemond v. United States*, 134 S. Ct. 1240 (2014). But in *Rosemond* the Court addressed the elements of aiding and abetting liability under § 924(c)(1)(A), not what must be proven for principal liability. The government acknowledges this but says we should take a note from the Court's description of § 924(c)(1)(A) as a "combination crime," one that "punishes the temporal and relational conjunction of two separate acts, on the ground that they together pose an extreme risk of harm." *Id.* at 1248. Our dissenting colleague echoes this argument, reading *Rosemond* to "suggest[] that the unit of prosecution is based upon pairing the crime of violence with the use of the firearm." Dissent at 3. We of course agree with these observations but fail to see how they decide our case. Mr. Rentz no less than the government agrees that § 924(c)(1)(A) punishes the conjunction — the pairing, if you like — of a gun use and a qualifying crime. The question isn't whether § 924(c)(1)(A) is a combination crime but the nature of that combination, more particularly whether there must be a combination of an independent use/carry/possession and an independent crime of violence or drug trafficking offense for each § 924(c)(1)(A) charge. On that, the dispositive question in our case, *Rosemond* offers not a hint, let alone suggests that the statute unambiguously favors the government's position in this case.

possession existed over a continuous period of time), *with Phipps*, 319 F.3d at 188 n.11 (suggesting this might count as two acts of possession); *United States v. Cejas*, 761 F.3d 717, 729 (7th Cir. 2014) (upholding two convictions for two acts of possession separated by nearly a week). But to resolve this appeal, we don't have to wade into such troubled waters. Throughout this appeal both sides have proceeded on the premise that this case involves only one use, carry, or possession of a firearm. That much is shared ground. And to know that much is to know the government may seek and obtain no more than one § 924(c)(1)(A) conviction. Resolving that question is work enough for the day and tomorrow's questions may be left to tomorrow. The panel opinion is vacated and the district court is affirmed.

12-4169 – *United States v. Rentz*

**HARTZ,** Circuit Judge, concurring:

I join the concurrence of Judge Matheson. I add a few words, however, to elaborate further on why I believe the government's arguments are rather strong, although not strong enough to overcome the rule of lenity.

As I read the words of 18 U.S.C. § 924(c)(1)(A) in isolation, they lend themselves most readily to the government's interpretation. The operative language for this case is as follows: "[A]ny person who, during and in relation to any crime of violence . . . , uses . . . a firearm, . . . shall, in addition to the punishment provided for such crime of violence . . . be sentenced to a term of imprisonment of not less than 5 years." This statutory language looks like a typical sentence-enhancement provision. And the focal point is the sentence for a crime of violence. The statute simply tells the court when to increase that sentence. When the defendant has been convicted of a crime of violence, add five years to the sentence if the defendant used a firearm during and in relation to that crime of violence. The enhancement would be imposed the same as an enhancement for an offense in which the victim was elderly or the offense was committed with a bigoted motive. The court's only concern about the unit of prosecution would be with how many crimes of violence had been committed. Once that is determined, the court simply increases the sentence for any of those crimes where the defendant used a firearm during and in relation to the crime.

This interpretation could lead to some harsh results. If, as in this case, the defendant committed two crimes of violence by performing a single act (pulling the

trigger only once), his total sentence could be increased by 10 years under

§ 924(c)(1)(A), because there would be a five-year increase to each sentence for a crime

of violence. This harshness, however, is less the result of anything peculiar in

§ 924(c)(1)(A) than of the fact that the single act can be prosecuted as multiple crimes of

violence. If there is any unit-of-prosecution issue, it arises solely from the government's

opportunity to have a defendant charged, convicted, and sentenced for two distinct crimes

of violence arising from the single physical act.

But § 924(c) is not a sentence-enhancement provision. As the Supreme Court

recognized in *Rosemond v.United States*, 134 S. Ct. 1240, 1247–48 (2014), it creates a

criminal offense. After all, § 924(c)(1)(B) speaks of "a person convicted of a violation of

this subsection." And because it is a criminal offense, it is important to analyze the

statute to determine the unit of prosecution, which is not necessarily the same as the

number of distinct crimes of violence. In performing the analysis, one must still take

account of the language in § 924(c)(1)(A), with its focus on increasing each crime-of-

violence sentence. Nevertheless, in my view the unit of prosecution in the case before us

is uncertain. Yes, an offense carrying a five-year sentence can be charged for each crime

of violence. But can one sentence under § 924(c)(1)(A) serve double duty—satisfying

the requirement that the punishment for each crime of violence be increased by five

years—when one physical act constitutes two crimes of violence? Here, for example,

Mr. Rentz committed murder and assault with one pull of the trigger. In addition to the

charge of murder he can be charged under § 924(c)(1) with a further offense that can add

2

a five-year sentence to the sentence for murder; and the same can be done for the assault charge. But the statute is silent on whether a single conviction (a single five-year sentence) under § 924(c)(1)(A) can satisfy the requirement that the sentence be increased for each of the two crimes of violence. Just as it is silent on whether under § 924(c)(1)(C) ("In the case of a second or subsequent conviction under this subsection, the person shall be sentenced to a term of imprisonment of not less than 25 years.") one conviction under § 924(c)(1)(A) is "subsequent" to another if both arose from the same physical act. *But cf. Deal v. United States*, 508 U.S. 129, 132 (1993) (when defendant convicted at one proceeding of six offenses under § 924(c) committed on different dates, five of the convictions were subsequent convictions under § 924(c)(1)(C)). Put another way, the statute does not explicitly address how § 924(c)(1) operates when one physical act in using a firearm causes two crimes of violence. Given the extraordinary consequences that could befall a defendant, we should not assume that Congress intended the harshest possible consequence. I need not engage in further discussion, because Judge Matheson's opinion establishes the ambiguity of the statute as applied to our unusual circumstance here.

12-4169, *United States v. Rentz*
**MATHESON**, Circuit Judge, concurring, joined by **BRISCOE, HARTZ,** and
**PHILLIPS**, Circuit Judges.

After Philbert Rentz fired a single gunshot that wounded one victim and killed another, he was charged with two crimes of violence—assault and murder—and two counts of using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). Mr. Rentz moved to dismiss the second § 924(c) count. The district court granted his motion, holding that multiple § 924(c) charges arising from a single use of a firearm are impermissible. The Government appealed the pre-trial dismissal of the second § 924(c) count. A panel of this court, exercising jurisdiction under 18 U.S.C. § 3731 and relying on Tenth Circuit precedent, reversed the district court order. This court then granted en banc rehearing to determine whether Mr. Rentz can be charged with two § 924(c) offenses for using a gun only once. On en banc review, I concur he cannot be so charged.

The following discusses (1) the difference between the elements of an offense and the unit of prosecution, (2) the overlap between double jeopardy and the unit of prosecution, (3) the ambiguity of 18 U.S.C. § 924(c) regarding the unit of prosecution, (4) application of the rule of lenity, and (5) the relation of this case to Tenth Circuit precedent. This discussion differs from the majority opinion in recognizing that charging two offenses based on one unit of prosecution violates double jeopardy, emphasizing § 924(c)'s ambiguity to a greater extent, relying solely on ambiguity and the rule of lenity to conclude only one § 924(c) charge should be allowed, and explaining how the en banc court is less constrained under Tenth Circuit case law than the panel was in deciding this issue.

1. **Elements of the Offense and Unit of Prosecution**

Courts consider the elements of a crime more often than a criminal statute's unit of prosecution. The two can easily be confused but are conceptually distinct.

The elements of an offense define what must be proved to convict a defendant of a crime. There are two elements to a § 924(c) offense: the defendant must (1) "use[] or carr[y]" or "possess[]" a firearm (2) "during and in relation to any crime of violence or drug trafficking crime." 18 U.S.C. § 924(c); *see Rosemond v. United States*, 134 S. Ct. 1240, 1248 (2014) ("[Section] 924(c) is, to coin a term, a combination crime. It punishes the temporal and relational conjunction of two separate acts, on the ground that together they pose an extreme risk of harm."); *Smith v. United States*, 508 U.S. 223, 227-28 (1993) ("By its terms, the statute requires the prosecution to make two showings. First, the prosecution must demonstrate that the defendant 'use[d] or carrie[d] a firearm.' Second, it must prove that the use or carrying was 'during and in relation to' a 'crime of violence or drug trafficking crime.'").

By contrast, the unit of prosecution defines *how many* offenses the defendant has committed. It determines "whether conduct constitutes one or several violations of a single statutory provision." *Callanan v. United States*, 364 U.S. 587, 597 (1961); *see also Sanabria v. United States*, 437 U.S. 54, 69-70 (1978) (describing the "unit of prosecution" as a "congressional choice" determining "[w]hether a particular course of conduct involves one or more distinct 'offenses' under the statute"). For example, if the elements of an offense consist of at least two acts, X (e.g., use of a firearm) and Y (e.g., crime of violence), and in the same course of conduct the defendant has done X once and

-2-

Y twice, then he or she has committed one crime if the unit of prosecution is X, two

crimes if the unit of prosecution is Y, and one crime if the unit of prosecution is X and Y

combined.[1]

The elements of the § 924(c) offense in this case are "use" and "crime of

violence." The candidates for unit of prosecution are "use," "crime of violence," or "use

---

[1] To provide a more concrete example, the federal stalking statute makes it a crime when a defendant, "*with the intent* to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate *another person*, uses . . . any . . . facility of interstate or foreign commerce to engage in a *course of conduct* that" causes the victims to fear for themselves or their family. 18 U.S.C. § 2261A(2) (emphasis added). The statute thus has several elements, including (1) the intent to harm a particular victim and (2) a course of conduct.

In *United States v. Shrader*, 675 F.3d 300, 313 (4th Cir. 2012), the Fourth Circuit held that "18 U.S.C. § 2261A(2) unambiguously makes the victim, rather than the course of conduct, the unit of prosecution."

The defendant in *Shrader* was charged with two counts of stalking under the statute for engaging in a single course of conduct that harassed and intimidated a victim and her husband. *Id.* at 302-05. The defendant argued he should have been charged with only one count because he only engaged in one course of conduct. *Id.* at 313.

The Fourth Circuit disagreed, holding that the plain language of the statute makes the unit of prosecution the victim. Specifically, the Fourth Circuit noted that the "statute does not punish fungible acts, such as possession of cocaine in two different receptacles, but rather defines the defendant's crime—and therefore the unit of prosecution—in terms of his intent to strike fear in a particular individual." *Id.* (citation omitted). The court also pointed out the requirement that the defendant's intimidating conduct induce fear in the victim is "more than just an element of the crime—the effect on a particular victim is also how Congress has chosen to allocate punishment for the offense[,] . . . provid[ing] a scale of punishments depending on the gravity of the harm" to the victim. *Id.* (citing 18 U.S.C. § 2261(b)).

Accordingly, both stalking charges in *Shrader* were permissible, because each was based on a different victim and therefore a different unit of prosecution. *Id.* at 313-14.

-3-

and crime of violence" in conjunction.[2]  Regardless of what constitutes the unit of prosecution, the prosecution must prove both elements of the § 924(c) offense.

2. **Section 924(c) and Double Jeopardy**

The unit of prosecution is inextricably tied to double jeopardy.  As the following discussion shows, if Mr. Rentz's alleged conduct violated only one § 924(c) unit of prosecution but the indictment charged him with two § 924(c) counts, the indictment would misapply the statute and violate double jeopardy.

The Fifth Amendment Double Jeopardy Clause provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  "The Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (quotations omitted).

Relevant here, the Double Jeopardy Clause protects criminal defendants "against multiple punishments for the same offense imposed in a single proceeding."  *Jones v. Thomas*, 491 U.S. 376, 381 (1989) (quotations omitted).  "[T]he role of the constitutional guarantee" in this context "is limited to assuring that the court does not exceed its

---

[2] If the Government is correct that the unit of prosecution is crime of violence, it does not have to prove separate uses to charge two § 924(c) charges as long as there are two underlying crimes of violence.  The Government therefore would not be positing "[a] sort of appearing and then disappearing elemental burden, a world in which verbs vanish but their modifiers float freely and commandingly alone."  Maj. Op. at 11.  Proving one use and two crimes of violence would be sufficient to meet the elements of two § 924(c) charges and would not run afoul of any unit of prosecution issues.

legislative authorization by imposing multiple punishments for the same offense."

*Brown*, 432 U.S. at 165.  In other words,

> the Fifth Amendment double jeopardy guarantee serves principally as a restraint on courts and prosecutors.  The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense.

*Id.*

Double jeopardy questions of this nature can arise when (a) a defendant is charged under more than one statute covering the same conduct, or (b) a defendant is charged multiple times under the same statute for the same conduct.  *See* Peter Westen & Richard Drubel, *Toward a General Theory of Double Jeopardy*, 1978 Sup. Ct. Rev. 81, 111.  Both categories can arise in § 924(c) cases, though only the second is implicated in this case.

Determining whether double jeopardy is a problem in the first category of cases requires courts to apply the *Blockburger* test.  *See Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.").

The second category requires courts to determine the proper unit of prosecution. "[W]here two violations of the same statute rather than two violations of different statutes are charged, courts determine whether a single offense is involved not by applying the *Blockburger* test, but rather by asking what act the legislature intended as the 'unit of prosecution' under the statute."  *United States v. Weathers*, 186 F.3d 948, 952 (D.C. Cir.

1999); *see also id.* at 951-52 (noting "the Double Jeopardy Clause protects not only against a second prosecution for the same offense after acquittal or conviction, but also against multiple punishments for the same offense" and considering the unit of prosecution in this context (quotations omitted)). Thus, a unit of prosecution analysis is a double jeopardy analysis.

When a defendant is charged with multiple violations of a single statute, the double jeopardy inquiry focuses on "whether Congress intended the facts underlying each count to make up a separate unit of prosecution." *United States v. Grimes*, 702 F.3d 460, 468 (8th Cir. 2012) (quotations omitted). So long as each count is based on a separate unit of prosecution, multiple charges under a single statute are permissible. If multiple charges are based on the same single unit of prosecution, however, they run afoul of the Double Jeopardy Clause. *See United States v. Woerner*, 709 F.3d 527, 539 (5th Cir. 2013) ("The second type of [double jeopardy] challenge arises when charges for multiple violations of the same statute are predicated on arguably the same criminal conduct. In that circumstance, the court inquires whether separate and distinct prohibited acts, made punishable by law, have been committed." (quotations omitted)).

"[T]he [D]ouble [J]eopardy [C]lause imposes no restraints on the power of Congress to define the allowable unit of prosecution . . . ." *United States v. McDonald*, 692 F.2d 376, 377 (5th Cir. 1982). Therefore, our "sole question" in a unit-of-prosecution case is "whether Congress intended to provide for multiple punishments." *Id.*; *see also Sanabria*, 437 U.S. at 69-70 ("It is Congress, and not the prosecution, which establishes and defines offenses. Few, if any, limitations are imposed by the Double

Jeopardy Clause on the legislative power to define offenses. But once Congress has defined a statutory offense by its prescription of the 'allowable unit of prosecution,' that prescription determines the scope of protection afforded by a prior conviction or acquittal." (citations omitted)).

Thus, even if two underlying crimes of violence are separate under the *Blockburger* test, two § 924(c) charges may nonetheless violate double jeopardy if they are based on the same unit of prosecution under the statute. The unit of prosecution by definition can support only one offense, and charging two § 924(c) offenses on a single unit would thus simultaneously misapply the statute and violate double jeopardy. This circuit has recognized as much, albeit in the context of a different statute. *See United States v. Jackson*, 736 F.3d 953, 956 (10th Cir. 2013) ("[L]enity limits § 2113(e) to only one unit of prosecution based on its ambiguity. Therefore, Mr. Jackson's sentence for two violations of § 2113(e) arising from a single car accident in the course of a single bank robbery is violative of double jeopardy, and upon remand the district court should vacate one of the sentences.").

No one contests the two crimes of violence here—assault and murder—are two separate offenses under *Blockburger*. The contested issue is whether the language of § 924(c) can avoid a unit-of-prosecution double jeopardy problem and support two § 924(c) charges arising from a single use of a firearm causing two underlying crimes of violence, or whether each § 924(c) charge must be predicated upon a separate use of a firearm.

Whether charging two § 924(c) offenses based on the same conduct violates

double jeopardy depends on what constitutes the unit of prosecution under § 924(c),

which in turn depends on construing § 924(c) itself.  *See United States v. Universal C.I.T.*

*Credit Corp.*, 344 U.S. 218, 221 (1952) (explaining that determining the unit of

prosecution under criminal statutes requires "construction of the criminal provisions").  I

therefore turn next to a statutory construction of § 924(c).

3.  **Statutory Construction of § 924(c)**

    a.  *Text*

Statutory construction begins with the text of the statute.  *See United States v.*

*Handley*, 678 F.3d 1185, 1189 (10th Cir. 2012).  As noted above, § 924(c) provides in

relevant part, "[A]ny person who, during and in relation to any crime of violence or drug

trafficking crime . . . uses . . . a firearm . . . shall, in addition to the punishment provided

for such crime of violence," be sentenced to an additional prison term.  18 U.S.C.

§ 924(c)(1)(A).

The Government argues the phrase "during and in relation to *any* crime of

violence" defines the proper unit of prosecution.  *Id.* (emphasis added); *see* Aplt. Suppl.

Br. at 9 ("The structure of the statute shows that the applicability of § 924(c) does not

depend on how many times a person uses, carries, or possesses a firearm, but rather how

many offenses he commits with the firearm.").[3]  The Government cites to *Rosemond v.*

---

    [3] The Government's supplemental brief states, "The statute's plain language
indicates that the unit of prosecution is the use or carrying of a firearm during and in
relation to an underlying crime of violence or drug trafficking crime."  Aplt. Suppl. Br. at

*United States*, 134 S. Ct. at 1248-49, for the proposition that because a § 924(c) offense requires proof of *both* the use of a firearm *and* the commission of a crime of violence, this means that "[r]ather than punishing 'any use' of a firearm during a crime of violence, Congress chose to punish the commission of 'any crime of violence' accomplished through the use of a firearm." Aplt. Suppl. Br. at 8.

The Government's interpretation finds some support in the text of the statute. In particular, the word "any" could suggest Congress intended to punish an armed offender with a separate § 924(c) count for each underlying violent crime. Similarly, the phrase "in addition to the punishment provided for such crime of violence" lends itself to the construction that a separate § 924(c) charge is to be applied on top of each underlying, antecedent crime of violence.[4]

The context of § 924(c) could also suggest the unit of prosecution is crime of violence. The machine gun clause of § 924(c), for example, states "if *the* firearm

_____

6. If this truly were the Government's position—that the unit of prosecution is use and crime of violence—it could not charge two § 924(c) offenses when there is only one use. The Government's brief later clarifies its position, stating that "a defendant who uses a firearm to commit two crimes of violence may be charged with two violations of § 924(c), regardless of whether he 'used' the firearm more than once." Aplt. Suppl. Br. at 10. Because the Government views the number of underlying crimes as determining the number of possible § 924(c) charges, I understand the Government more precisely to be arguing that the unit of prosecution is defined by the phrase "during and in relation to any crime of violence." 18 U.S.C. § 924(c)(1)(A).

[4] This part of the statute provides that whoever commits the two elements—use and crime of violence—"shall, in addition to the punishment provided for such crime of violence . . . be sentenced to a term of imprisonment of not less than five years." 18 U.S.C. § 924(c)(1)(a). This clause could possibly have solved the unit-of-prosecution puzzle by stating "sentenced to an additional five-year term for the crime of violence" or "for the use of a firearm." But instead it leaves the matter ambiguous.

possessed . . . is a machinegun . . . the person shall be sentenced to a term of imprisonment of not less than 30 years."  18 U.S.C. § 924(c)(1)(B)(ii) (emphasis added).  "The employment of the word 'the' implies that Congress *was* thinking of the underlying drug crime or crime of violence. . . . Congress spoke in terms of the word 'the' because it did not regard as significant the number of times guns, or the number of guns that were carried or used during and in relation to the predicate crime."  *United States v. Anderson*, 59 F.3d 1323, 1327 (D.C. Cir. 1995) (en banc).[5]

In contrast, Mr. Rentz argues the text of § 924(c) is ambiguous as to the unit of prosecution.  Although "during and in relation to any crime of violence" might suggest that the proper unit of prosecution is a single underlying offense, the competing phrase "uses or carries a firearm" suggests the number of firearm *uses* defines the number of offenses under the statute.

I agree with the majority in recognizing the verb form of "uses or carries" is a "clue" to the appropriate unit of prosecution.  Maj. Op. at 8.  But this clue is not dispositive.  *See United States v. Rodriquez-Moreno*, 526 U.S. 275, 280 (1999) ("[W]e have never before held, and decline to do so here, that verbs are the sole consideration in identifying the conduct that constitutes an offense.  While the 'verb test' certainly has value as an interpretative tool, it cannot be applied rigidly, to the exclusion of other relevant statutory language.").

---

[5] The majority's discussion of § 924(c)'s broader context points in the opposite direction, Maj. Op. at 11-13, contributing to § 924(c)'s ambiguity as to its unit of prosecution.

Alternatively, although neither party has argued this, the language of § 924(c) could suggest the unit of prosecution should be defined by each underlying crime of violence combined with each use of a firearm. *See United States v. Cureton*, 739 F.3d 1032, 1043 (7th Cir. 2014); *United States v. Phipps*, 319 F.3d 177, 185-86 (5th Cir. 2003). The majority's analysis supports this interpretation, noting the "adverbial prepositional phrases modify the verbs uses, carries, and possesses" and serve as further "clues," "tell[ing] us *which* acts of using, carrying, or possessing Congress sought to punish." Maj. Op. at 8-9. The verbs, modified by the adverbial prepositional phrases, suggest each § 924(c) charge "must involve *both* an act of using, carrying, or possessing *and* that such an act must come during and in relation to (or in furtherance of) a qualifying crime." *Id.* at 9.[6]

Given these various interpretations of the statute, I agree with Mr. Rentz that the language of § 924(c) is unclear. Indeed, "[t]here is a widely-shared view that the statute's text is ambiguous." *United States v. Finley*, 245 F.3d 199, 207 (2d Cir. 2001). Of the five circuits aside from our own that have addressed whether the unit of prosecution under § 924(c) permits multiple charges arising from a single use, four have found the statute to be unclear on this score. *See Cureton*, 739 F.3d at 1044; *Phipps*, 319 F.3d at 186; *Finley*, 245 F.3d at 207; *United States v. Wilson*, 160 F.3d 732, 749-50 (D.C.

---

[6] The dissent views the unit of prosecution as both the use of a firearm and crime of violence, and concludes that charging two § 924(c) counts against Mr. Rentz was proper even though he used the firearm only once. *See* Dissent at 2-3. The statute, however, does not unambiguously allow such double counting of "use" or clearly identify the unit of prosecution, which takes us to the rule of lenity to resolve this case.

Cir. 1998). *But see United States v. Sandstrom*, 594 F.3d 634, 658-59 (8th Cir. 2010) (holding "multiple underlying offenses support multiple § 924(c)(1) convictions").

*Rosemond* does not shed light on the proper unit of prosecution under § 924(c), as the majority aptly explains. The Supreme Court's focus in *Rosemond* was limited to whether the defendant in that case had furthered an *element* of the § 924(c) charge, regardless of whether that element was the unit of prosecution. *See* 134 S. Ct. at 1247-48. *Rosemond* gives us no guidance on which element or elements define the unit of prosecution under § 924(c).

I therefore agree with the majority of circuits that § 924(c) does not "unambiguously authorize[] multiple convictions for a single use of a single firearm during and in relation to multiple predicate offenses." *Phipps*, 319 F.3d at 186.

b. *Legislative History and Public Policy*

When a statute is ambiguous on its face, "we look to the legislative history and the underlying public policy of the statute" to assist in our statutory construction. *Handley*, 678 F.3d at 1189 (quotations omitted). In this instance, the legislative history and public policy rationale behind § 924(c) offer little assistance.

i. Legislative history

The legislative history of § 924(c) is both meager and muddled. *See United States v. Diaz*, 592 F.3d 467, 473-74 (3d Cir. 2010); *Anderson*, 59 F.3d at 1338 (Ginsburg, J., dissenting). I wish to add to the majority's discussion of the 1983 Senate Report No. 98-225.

The predecessor to the current version of the statute was first adopted as part of the Gun Control Act of 1968. The legislative history of that Act is limited to floor debates, as it does not contain any committee reports or congressional hearings. *See* Wendy Biddle, *Let's Make a Deal: Liability for "Use of a Firearm" When Trading Drugs for Guns Under 18 U.S.C. § 924(c)*, 38 Val. U. L. Rev. 65, 68-69 (2003); *see also United States v. Chalan*, 812 F.2d 1302, 1317 (10th Cir. 1987) (characterizing the legislative history of the original version of § 924(c) as "exceedingly sparse"). The legislative history "thus provides only murky insight into Congress' intent." *In re Mile Hi Metal Sys., Inc.*, 899 F.2d 887, 895 (10th Cir. 1990) (Seymour, J., concurring) (describing another statute for which there are no committee reports and only "contradictory floor statements by members of the House and Senate"); *see also Kenna v. U.S. Dist. Court for C.D. Cal.*, 435 F.3d 1011, 1015 (9th Cir. 2006) ("Floor statements are not given the same weight as some other types of legislative history, such as committee reports, because they generally represent only the view of the speaker and not necessarily that of the entire body.").

Even among the relatively unauthoritative floor statements concerning the original version of § 924(c), very few even appear to concern the proper unit of prosecution under the statute.

In his statement sponsoring the original version of § 924(c), Representative Poff declared that the purpose of the offense is "to persuade the man who is tempted to commit a Federal felony to leave his gun at home." 114 Cong. Rec. 22,231 (1968).

-13-

Senator Mansfield, who sponsored the original amendment to § 924(c) adding a heightened sentence for a second conviction under the statute, stated that the law "provides for the first time a separate and additional penalty for the mere act of choosing to use or carry a gun in committing a crime under Federal law.  If that choice is made more than once, the offender can in no way avoid a prison sentence regardless of the circumstances."  115 Cong. Rec. 34,838 (1969).

These two statements might lend some limited support for treating the number of firearm uses as the unit of prosecution.  *See Anderson*, 59 F.3d at 1328 (noting that Senator Mansfield's emphasis on the "*act of choosing to use or carry a gun*" might imply that § 924(c) "punishes one and only one crucial decision"—i.e., the decision to use a firearm during and in relation to the commission of a crime of violence or drug trafficking offense).

At the same time, however, Representative Poff's and Senator Mansfield's statements are themselves ambiguous.  *See Phipps*, 319 F.3d at 186-87 (citing the two statements but finding the statute did not unambiguously resolve whether multiple § 924(c) charges were permissible).  Representative Poff's focus on "the man who is tempted to *commit a Federal felony*" shifts emphasis away from the use of the firearm and toward the commission of the underlying crime.  114 Cong. Rec. at 22,231 (emphasis added); *see Diaz*, 592 F.3d at 474 (concluding Representative Poff's statement is not "enlightening" as to the unit of prosecution).  Senator Mansfield meanwhile, cabins his focus on "the act of choosing to use or carry a gun" by adding the modifying phrase "in committing a crime under Federal law," 115 Cong. Rec. at 34,838, which could be read

-14-

as suggesting both the firearm and the underlying crime together constitute the unit of prosecution.

The later amendment history of § 924(c) is likewise of little assistance. Mr. Rentz argues that Congress's failure to clarify the unit of prosecution in § 924(c) itself after circuit courts applied the rule of lenity, as will be explained below, indicates congressional intent to conform to those circuits' interpretations of the statute. Aplee. Suppl. Br. at 16-17 (citing *Harrison v. PPG Industries, Inc.*, 446 U.S. 578, 602 (1980) (Rehnquist, J., dissenting) ("In a case where the construction of legislative language such as this makes so sweeping and so relatively unorthodox a change as that made here, I think judges as well as detectives may take into consideration the fact that a watchdog did not bark in the night.")).

I am unconvinced, however, that Congress's silence in response to a few circuit court decisions applying the rule of lenity to an ambiguous statute equates to its tacit adoption of an interpretation of the unit of prosecution under § 924(c). Although we presume Congress is aware of judicial interpretations, *see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 382 n.66 (1982), its failure to respond to these interpretations is not necessarily indicative of congressional intent to adopt them.

In short, the legislative history of § 924(c) provides scant clues as to whether Congress intended the statute to apply twice when a defendant has used a gun once to commit two underlying offenses. Any inferences we may draw from the legislative history are tenuous at best. A few floor statements providing limited support for different readings of the statute cannot cure § 924(c) of its ambiguity.

ii. Public policy

Public policy considerations based on legislative purpose are likewise unhelpful in resolving § 924(c)'s ambiguity.

Section 924(c) was enacted "to deter the use of firearms in connection with the commission of federal felonies." *United States v. Lanzi*, 933 F.2d 824, 826 (10th Cir. 1991). Based on the statute's deterrence rationale, the district court in this case seemed to suggest that a single § 924(c) charge would be sufficient to serve the statute's purposes: "I believe that, consistent with the intent of Congress, that this act is a deterrent. If you're talking about a single act, the logic of applying a deterrent does not apply." App. at 59.

But the deterrence rationale may point the other way. Allowing multiple § 924(c) charges to arise from a single use of a firearm, including in this case, could also be consistent with a deterrence rationale. The possibility of facing multiple § 924(c) charges can and should deter an offender from firing his or her gun in the direction of two or more people.

Thus, the deterrence policy underlying § 924(c) does not resolve the statute's textual ambiguity.[7]

---

[7] The Government argues the unit of prosecution is "crime of violence," and justifies the two § 924(c) charges based on the assault and murder crimes alleged against Mr. Rentz. Mr. Rentz does not advocate a particular unit of prosecution, arguing instead the statute is ambiguous on this question. I agree with him. The majority opinion's analysis of § 924(c)'s verbs—"uses," "carries," "possesses"—suggests "use" may be the unit of prosecution. *See* Maj. Op. at 7-8. And this is how the dissent reads the majority opinion. *See* Dissent at 1. But the majority opinion also points out that the verbs should

4.  **Rule of Lenity**

Based on the rule of lenity and this court's review of the issue en banc, I apply § 924(c) in Mr. Rentz's favor and conclude that two § 924(c) charges based on a single use of a firearm causing two crimes of violence are impermissible. This conclusion is in line with most circuits to have considered the narrow issue presented in this case.

The majority applies the rule of lenity "[t]o the extent any ambiguity remains . . . about the meaning of § 924(c)(1)(A)." Maj. Op. at 16. As the foregoing indicates, I discern greater ambiguity as to § 924(c)'s unit of prosecution than this statement suggests. The following discussion (a) applies the rule of lenity to this case and (b) describes how other circuits have applied the rule of lenity in § 924(c) cases.

a.  *Lenity applied to this case*

The rule of lenity provides that "if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses." *Bell v. United States*, 349 U.S. 81, 84 (1955). The Supreme Court recently explained that "'[t]he simple existence of some statutory ambiguity, however, is not sufficient to warrant application of that rule, for most statutes are ambiguous to some degree.'" *Dean v. United States*, 556 U.S. 568, 577 (2009)

_____

be read together with "crime of violence," suggesting "use" plus "crime of violence" is the unit of prosecution. *Id.* at 8-10; *see also id.* at 16 ("Here that means the government must prove both a use, carry, or possession as well as a qualifying crime."). My view is that the statute is ambiguous as to which possibility—"use," "crime of violence," or "use" plus "crime of violence"—is the unit of prosecution, so much so that the rule of lenity should be used to decide this case. The rule of lenity does not compel us to choose a unit of prosecution; it provides only one 924(c) charge is permissible in this case.

(quoting *Muscarello v. United States*, 524 U.S. 125, 138 (1998)). Indeed, "[a] statute is not ambiguous for purposes of lenity merely because there is a division of judicial authority over its proper construction." *Reno v. Koray*, 515 U.S. 50, 64-65 (1995) (quotations omitted).

Instead, the rule of lenity applies only if there is "grievous ambiguity or uncertainty in the statute." *Dean*, 556 U.S. at 577 (quotations omitted). An ambiguity is grievous only if "after seizing everything from which aid can be derived, we can make no more than a guess as to what Congress intended." *Muscarello*, 524 U.S. at 138 (alterations and quotations omitted).[8]

Section 924(c) is sufficiently ambiguous as to its unit of prosecution to warrant rule-of-lenity application. As explained above, the text of the statute is unclear, and the meager legislative history sheds little light on whether Congress intended to permit multiple § 924(c) convictions when a defendant has fired a gun only once but has thereby committed two crimes of violence. Apart from *United States v. Barrett*, 496 F.3d 1079 (10th Cir. 2007), which will be considered below, we have no clear Tenth Circuit precedent to guide us on this issue and therefore are left with "no more than a guess" as to whether Congress intended Mr. Rentz to face one § 924(c) charge or two. *Muscarello*, 524 U.S. at 138 (quotations omitted); *see United States v. Jones*, 841 F.2d 1022, 1023 (10th Cir. 1988) ("When the intent of Congress as to the unit of prosecution cannot be

---

[8] The majority's reliance on lenity "[t]o the extent any ambiguity remains," Maj. Op. at 16, must mean that, even after its textual analysis of the statute's verb and adverb structure, "grievous ambiguity" remains.

clearly discerned, doubt must be resolved in favor of lenity." (alterations and quotations omitted)).

The Supreme Court has applied the rule of lenity in cases analogous to ours, as the majority opinion discusses. *See Ladner v. United States*, 358 U.S. 169, 173-78 (1958) (finding the unit of prosecution in 18 U.S.C. § 254 to be ambiguous and thus applying the rule of lenity to hold only one charge was permissible in the case of a single discharge of a shotgun that wounded two officers); *Bell*, 349 U.S. at 83 (finding the unit of prosecution in the Mann Act to be ambiguous and thus applying the rule of lenity to hold only one violation of the Act could be charged).

Lenity is especially fitting in this case because of the harsh sentencing disparity between one and two § 924(c) charges. If convicted on both § 924(c) counts, Mr. Rentz would face an additional 25 years in prison on top of a mandatory minimum of 10 years. *See* 18 U.S.C. § 924(c)(1)(A)(iii), (C)(i). And, as the majority opinion shows, the Government's arguments to the contrary—based on congressional intent to punish harshly—are unavailing.

Doubt about the unit of prosecution, as the Supreme Court has instructed, is resolved "against turning a single transaction into multiple offenses." *Bell*, 349 U.S. at 84. Insofar as the elements of a § 924(c) offense are concerned, the government must prove both the use, carrying, or possession of a firearm as well as a qualifying crime. But we need not decide the unit of prosecution other than to join our sibling circuits in recognizing it is ambiguous under § 924(c) and to state that the rule of lenity permits only

one § 924(c) charge in a case like ours, where there is only one use but two crimes of violence.

b. *Lenity in other circuits*

This analysis and conclusion are consistent with the majority of circuits to address the issue of multiple § 924(c) charges arising from a single use.

In *United States v. Wilson*, the D.C. Circuit held that a defendant could not be convicted of two § 924(c) charges for the single use of a firearm to commit the crimes of first degree murder and the killing of a witness to prevent him from testifying. 160 F.3d at 749-50 & n.20. The D.C. Circuit applied the rule of lenity to the "ambiguous" language in § 924(c)(1) and concluded that only one § 924(c) charge could result from a case involving "only one firearm and one use, but two underlying offenses." *Id.* at 749.

Similarly, in *United States v. Finley*, the Second Circuit applied the rule of lenity to vacate one of two § 924(c) convictions where a defendant was charged with "continually possess[ing]" a firearm in connection with possession of a drug with intent to distribute and distribution of the drug. 245 F.3d at 206-07. The Second Circuit reasoned that the rule of lenity had to apply because "[t]here is a widely-shared view that the statute's text is ambiguous." *Id.* at 207 (citing *Anderson*, 59 F.3d at 1333). The Second Circuit also pointed to the statute's deterrence rationale as supporting one § 924(c) charge per choice to use a firearm. *See id.* (citing 115 Cong. Rec. at 34,838 (statement of Sen. Mansfield)). The Second Circuit later reiterated this conclusion in *United States v. Wallace*, 447 F.3d 184, 188 (2d Cir. 2006), which struck down one of two § 924(c) counts after the defendants committed two predicate drug offenses in a

single drive-by shooting.  *See id.* (citing *Finley*'s application of the rule of lenity as support for the conclusion that both § 924(c) offenses were based on the same unit of prosecution).[9]

In *United States v. Phipps*, the Fifth Circuit held that the proper unit of prosecution under § 924(c) is a single use of a firearm in connection with a single offense.  319 F.3d at 184.  The Fifth Circuit decided that it was unclear how this unit of prosecution should

---

[9] The Government argues the present case is not analogous to *Finley* or *Wallace* but instead is similar to *United States v. Mejia*, 545 F.3d 179, 205-06 (2d Cir. 2008), in which the Second Circuit distinguished its prior cases and upheld three § 924(c) counts when the defendants had shot three victims with multiple bullets.  *Mejia* relied on a prior Second Circuit case, *United States v. Lindsay*, 985 F.2d 666, 675 (2d Cir. 1993), which held that the appropriate unit of prosecution in a § 924(c) possession case was the predicate offense rather than the number of firearms.  *See Mejia*, 545 F.3d at 206 ("[T]he rule in *Lindsay*, which establishes that the appropriate unit of prosecution under § 924(c)(1) is the predicate offense, applies here.")

*Mejia* is inapposite to this case.  In *Mejia*, unlike here, the court found the defendants used a firearm multiple times during two drive-by shootings, causing three assaults of three victims, even though the uses happened around the same time.  *See id.* at 205-06 ("Although those separate shootings are clustered in time and space, that clustering does not somehow merge them into one predicate crime.").  The *Mejia* court did not have the opportunity to consider the circumstance we have here, in which a *single* use of a firearm gives rise to multiple predicate offenses.

And *Lindsay* may actually provide support for the position taken here.  In *Lindsay*, the Second Circuit acknowledged the statute "is ambiguous as to the appropriate unit of prosecution."  *Lindsay*, 985 F.3d at 675.  As such, it "invoke[d] the rule of lenity and conclude[d] that a defendant who uses multiple firearms in relation to a single drug-trafficking crime may be charged with only one violation of § 924(c)(1)."  *Id.* at 676 (citations omitted).  The court appears to have decided that "the appropriate unit of prosecution [is] the underlying drug-trafficking offense, not the separate firearms," in part, by invoking the rule of lenity.  *Id.* at 674.  The rule of lenity convinced it to adopt the unit of prosecution that would lead to fewer § 924(c) charges.  As explained, we use the rule of lenity here not to make a decision on the unit of prosecution, but rather to decide the number of appropriate § 924(c) charges.  Further, the Second Circuit in *Lindsay* held only that the number of *firearms* in a possession case—as opposed to the number of gunshots in a use case—does not determine the unit of prosecution under § 924(c).  *Id.* at 675.

apply, however, in a case where the defendants were charged with multiple counts of § 924(c) based on predicate offenses of kidnapping and carjacking arising from a single incident. *Id.* at 186. It therefore applied the rule of lenity and concluded that only one § 924(c) charge is proper where two predicate offenses arise from a single use. *Id.* at 186-88.

Finally, in the recent case of *United States v. Cureton*, the Seventh Circuit held that when a defendant has "used a firearm once, in the simultaneous commission of two predicate offenses, . . . he may only stand convicted of one violation of § 924(c)." 739 F.3d at 1043. The court invoked the Supreme Court's rule of lenity in *Bell*, *id.* at 1040-41 (citing *Bell*, 349 U.S. at 82, 84), and followed the Second, Fifth, and D.C. Circuits, which relied on ambiguity and lenity, *id.* at 1043. It said "the unit of prosecution is the use, carriage, or possession of a firearm during and in relation to a predicate offense," *id.*, and saw "no clear indication that Congress intended more than one § 924(c)(1) punishment" in these circumstances, *id.* at 1044.

The sole outlier among circuits is now the Eighth Circuit, whose decision in *United States v. Sandstrom* upheld two § 924(c) convictions arising from a single gunshot. 594 F.3d at 656-59. In *Sandstrom*, the death of one victim gave rise to two underlying offenses: shooting a victim because of his race and killing a victim to prevent him from reporting a crime to law enforcement. *Id.* at 656-57. The Eighth Circuit held that the two § 924(c) counts in that case were "distinguishable from one another because the defendants 'used' the firearm at issue in both counts to commit separate offenses, even though the offenses occurred simultaneously." *Id.* at 659.

Because only one of the five circuits to have addressed this question has concluded that § 924(c) unambiguously authorizes multiple charges arising from a single use, we cannot say that Congress has established the unit of prosecution in this case "clearly and without ambiguity." *Bell*, 349 U.S. at 84. I therefore agree with the majority of circuits that have held multiple § 924(c) charges impermissible when a defendant commits multiple crimes of violence or drug trafficking crimes but only uses a firearm once.

5. **Tenth Circuit Precedent**

Finally, I wish to discuss *United States v. Barrett*, which upheld two § 924(c) convictions based on a single gunshot that caused two crimes of violence. 496 F.3d 1079.

In its brief oral ruling, the district court granted Mr. Rentz's pre-trial motion and dismissed one of the two § 924(c) counts in the indictment, holding that § 924(c) does not permit multiple charges arising from a single use of a firearm.

A three-judge panel of this court initially reversed the district court's dismissal of one of the § 924(c) counts. *See United States v. Rentz*, 735 F.3d 1245, 1247 (10th Cir. 2013). It observed the district court had ignored Tenth Circuit precedent—in particular, *Barrett*. *Id.* at 1251-52. The panel upheld the two § 924(c) charges based on a single use of a firearm as consistent with *Barrett*. *See id.* at 1252 & n.7.

In *Barrett*, we upheld two § 924(c) counts based on a single gunshot causing two distinct crimes of violence. 496 F.3d at 1082, 1095-96. Kenneth Barrett was involved in a shoot-out with police officers executing a search warrant on his home for

-23-

methamphetamine and other evidence of drug-trafficking crimes. *Id.* at 1082-85.

Trooper David Eales of the Oklahoma Highway Patrol's Tactical Team was struck by

three gunshots from "continuous gunfire" as he emerged from a vehicle at Mr. Barrett's

residence. *Id.* at 1084-85. A later crime scene investigation determined that Mr. Barrett

had fired approximately 19 shots at law enforcement officers. *Id.* at 1085. Three of these

shots hit Trooper Eales—one in his chest, one in his flank, and one in his arm. *Id.* The

gunshot wound to the chest struck Trooper Eales's aorta, and this injury was determined

to be the cause of his death. *Id.*

Mr. Barrett was convicted of two counts in violation of 18 U.S.C. §§ 924(c)(1)(A)

and 924(j):[10] using a firearm during and in relation to the underlying offenses of (1)

"several drug-trafficking crimes [that resulted] in the death of a state law enforcement

officer" and (2) "the killing of a state law enforcement officer engaged in or on account

of the performance of such officer's duties." *Id.* at 1082. He was not separately charged

with the offenses underlying these two counts. *Id.* at 1093-94. To convict him on both

§ 924(c) counts, however, the jury was required to find that Mr. Barrett had "committed

at least one underlying offense with respect to each Count 1 and 2." *Id.* at 1094.

---

[10] 18 U.S.C. § 924(j) provides that "[a] person who, in the course of a violation of subsection (c), causes the death of a person through use of a firearm, shall—(1) if the killing is a murder . . . be punished by death or by imprisonment for any term of years or for life; and (2) if the killing is manslaughter . . . , be punished as provided in that section."

Section 924(j) is not a distinct offense from § 924(c), but rather operates as a penalty enhancement on top of a § 924(c) charge. For ease of reference, the following discussion refers to both of Mr. Barrett's charges simply as "§ 924(c) charges" or "§ 924(c) counts."

Although Mr. Barrett fired multiple shots, the *same single gunshot*—the fatal shot to Trooper Eales's chest—produced both predicate offenses underlying Mr. Barrett's two § 924(c) charges.[11] The first § 924(c) count required proof that Mr. Barrett "committed one or more of the predicate drug-trafficking offenses" and that "in the course of using the firearm Barrett killed Eales." *Id.* at 1095. The second § 924(c) count required the Government to prove that Barrett committed the predicate offense of killing a state law enforcement officer engaged in his duties. *Id.* at 1095-96. Although Mr. Barrett fired a stream of shots, only the single fatal shot to Trooper Eales's chest satisfied the required elements of both § 924(c) offenses.

Both types of double jeopardy issues discussed above—*Blockburger* and unit of prosecution—arose in *Barrett*.

First, as to *Blockburger*, the *Barrett* panel, reviewing only for plain error,[12] began by discussing Tenth Circuit precedent on the subject of multiplicity. *Id.* at 1095. Relying on *United States v. Sturmoski*, 971 F.2d 452, 461 (10th Cir. 1992), the panel then held that Counts 1 and 2 charging § 924(c) offenses were both proper because Mr. Barrett's underlying offenses—(1) "several drug-trafficking crimes [that resulted] in the death of a

---

[11] This court characterized "both counts [as being] based on Barrett's commission of several underlying offenses with a single, continuous use of a firearm." *Barrett*, 496 F.3d at 1096.

[12] In his direct appeal, Mr. Barrett asserted a host of issues, including several that were never presented to the district court. In particular, Mr. Barrett argued for the first time that the indictment in his case "was multiplicitous" because "all counts [we]re based on the same conduct, firearms and drugs, and for killing the same person." Defendant/Appellant's Brief at 41-42, *Barrett*, 496 F.3d 1079 (No. 06-7005).

state law enforcement officer" and (2) killing a state law enforcement officer—were distinct under the *Blockburger* analysis. *Barrett*, 496 F.3d at 1082, 1095-96.

Second, the *Barrett* panel asked whether the two § 924(c) counts "were based on a single 'unit of prosecution.'" *Id.* at 1095. As explained above, the "unit of prosecution" issue is a matter of statutory interpretation and double jeopardy. *See Sanabria*, 437 U.S. at 69-70. The *Barrett* opinion does not, however, contain a detailed statutory analysis of § 924(c). Instead, the panel reasoned that "[b]ecause the crimes underlying Count 1 are distinct from the crime underlying Count 2, the two § 924(c) counts are in turn considered distinct." *Barrett*, 496 F.3d at 1096. In other words, the *Barrett* court first noted that the underlying crimes of the two § 924(c) offenses were separate under *Blockburger*; it then extended that conclusion to the two § 924(c) offenses, finding that they were separate for double jeopardy purposes.

Based on the foregoing explanation of how double jeopardy concerns operate in the § 924(c) context, the result in *Barrett*—upholding two § 924(c) counts based on a single gunshot and two crimes of violence—can only be understood as considering "crime of violence" to be the unit of prosecution under the statute. If the unit of prosecution were the use of a firearm, or the distinct use of a firearm paired with a distinct crime of violence, the result in *Barrett* could not stand, because the two § 924(c) counts would be based on the same unit of prosecution and therefore violate double jeopardy.

For these reasons, the panel decision in this case concluded that despite *Barrett*'s lack of traditional statutory analysis, *Barrett* implicitly indicated that § 924(c) allows for

multiple firearm charges from a single use. Relying on this understanding, the panel

concluded, "The principle of stare decisis compels us to . . . hold, as in *Barrett*, that

multiple § 924(c) charges are permissible so long as the underlying violent or drug-

trafficking offenses are separate for double jeopardy purposes." *Rentz*, 735 F.3d at 1252.

Because the panel decided that Mr. Rentz's underlying charges—murder and assault—

were separate under the *Blockburger* test, *see id.* at 1253-54, and because the panel

understood the unit of prosecution under *Barrett* to be a crime of violence, the panel

reversed the district court's dismissal of the second § 924(c) charge.[13]

This court's en banc decision holds that multiple § 924(c) charges based on a

single firearm use are not permissible. The result in *Barrett* as to the § 924(c) charges in

that case is not consistent with that holding. Whether or not *Barrett* should have

---

[13] The panel also noted that Mr. Rentz's case presented a stronger case for multiple § 924(c) charges than *Barrett* because Mr. Rentz shot two victims and Mr. Barrett shot only one. *See Rentz*, 735 F.3d at 1252. The dissent relies on the number of victims. *See* Dissent at 3-4. But § 924(c) does not use the word "victim" or any similar term to denote the object of the crime. *Cf. Shrader*, 675 F.3d at 309-10, 313-14 (considering the federal stalking offense that explicitly refers to the victim and deciding the victim is the unit of prosecution). The number of victims may determine the number of underlying crimes— for instance, when a defendant assaults two victims rather than one—but "victim" cannot be the unit of prosecution for a § 924(c) charge because § 924(c) does not address the number of victims.

Even in cases considering statutes that explicitly refer to the victim, the Supreme Court and this court have applied the rule of lenity to find only one charge could result despite the existence of multiple victims. *See Ladner*, 358 U.S. at 170-71 (holding only one 18 U.S.C. § 254 charge could result from a single discharge of a gun wounding two officers); *Bell*, 349 U.S. at 81-83 (holding only one Mann Act charge could result from the single transport of two women); *Jackson*, 736 F.3d at 955-57 (holding only one 18 U.S.C. § 2113(a) charge could result from one bank robbery-related accident resulting in the death of two women).

-27-

constrained the panel in this case as a precedent, it does not control the en banc court's

decision on the issue presented in this appeal.[14]

**Conclusion**

Because § 924(c) does not unambiguously authorize both § 924(c) counts in this

case, I agree we should vacate the panel decision, affirm the district court, and remand.

---

[14] This court's holding should be limited to cases in which a defendant uses a single gun a single time and commits two separate crimes of violence as a result. This court does not address in this appeal how § 924(c) should apply when a defendant uses a firearm multiple times in a single criminal episode or continually possesses a firearm or firearms while committing multiple violent or drug trafficking offenses. I also agree with the majority that the question of "what exactly suffices to constitute a unique and independent use, carry, or possession," Maj. Op. at 20, should be left to another day.

We have previously upheld multiple convictions under § 924(c) arising from a single criminal episode or continual possession of a single or multiple firearms, so long as the underlying offenses were separate for double jeopardy purposes. *See United States v. Renteria*, 720 F.3d 1245, 1256 (10th Cir. 2013) (upholding under plain error review two § 924(c) charges for possession of methamphetamine with intent to distribute and conspiracy to traffic in methamphetamine when there was possession of several firearms); *United States v. Malone*, 222 F.3d 1286, 1292-93 (10th Cir. 2000) (upholding two § 924(c) convictions for using a firearm in relation to the crimes of robbery and carjacking arising from a continuous course of conduct); *United States v. Floyd*, 81 F.3d 1517, 1527 (10th Cir. 1996) (permitting two § 924(c) counts for using a firearm during the underlying offenses of kidnapping and carjacking arising from a single course of conduct); *United States v. Davis*, 55 F.3d 517, 519-20 (10th Cir. 1995) (upholding two § 924(c) charges for the possession of crack cocaine and the possession of powder cocaine when the defendant possessed a different gun as to each offense); *United States v. Callwood*, 66 F.3d 1110, 1114-15 (10th Cir. 1995) (upholding three convictions under § 924(c) tied to three separate drug-related offenses when the defendant possessed one gun); *Sturmoski*, 971 F.2d at 461-62 (upholding two § 924(c) charges for the crimes of maintaining an establishment for the purpose of methamphetamine manufacture and attempting to manufacture methamphetamine when the defendant possessed one firearm); *United States v. Abreu*, 962 F.2d 1425, 1432-34 (10th Cir. 1992) (upholding two § 924(c) convictions for possession with intent to distribute cocaine and conspiracy to possess cocaine with intent to distribute when the defendant possessed a different gun as to each offense).

**No. 12-4169, United States of America v. Philbert Rentz.**

**KELLY, Circuit Judge, dissenting.**

Defendant-Appellee Philbert Rentz fired a single bullet that passed through Verveen Dawes, causing him serious bodily injury, and then struck and killed Tedrick Francis. Not surprisingly, Mr. Rentz was indicted for second-degree murder while within Indian country, 18 U.S.C. § 1111; use of a firearm in furtherance of the murder, 18 U.S.C. § 924(c); assault causing serious bodily injury while in Indian country, 18 U.S.C. § 113(a)(6); and use of a firearm in furtherance of assault, 18 U.S.C. § 924(c). Mr. Rentz was also indicted for possession of a firearm by a felon, 18 U.S.C. § 922(g).

This court holds that the government overcharged Mr. Rentz because there was only a single use, carry, or possession of a firearm under § 924(c). The court's holding is based upon its view of the proper unit of prosecution of a § 924(c) offense, here the use of a firearm, and the rule of lenity, which applies when a statute is grievously ambiguous or uncertain.[1] According to this court, the second § 924(c) count in the indictment would have required Mr. Rentz to have used, carried, or possessed a firearm a second time. I respectfully dissent. I would reverse the district court's dismissal of the second § 924(c) count.

The proper unit of prosecution should be the <u>combination</u> of the conduct identified in § 924(c). The statute proscribes and provides additional punishment for "any person

---

[1] It is worth noting that at least two circuits have upheld multiple § 924(c) convictions resulting from the single use of a firearm given distinct crimes of violence. <u>United States v. Sandstrom</u>, 594 F.3d 634, 659 (8th Cir. 2010); <u>United States v. Barrett</u>, 496 F.3d 1095-96 (10th Cir. 2007).

who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). No one disputes that Mr. Rentz possessed, used, and carried a firearm vis-a-vis the two crimes of violence which involved distinct victims. Allowing prosecution for each § 924(c) offense comports not only with this court's precedent, but also with the Supreme Court's recent guidance on the type of conduct proscribed by § 924(c). In the Court's view, § 924(c) is a "combination crime," where neither the underlying offense nor use of a gun is sufficient. In rejecting the defendant's argument that use of the firearm defines the offense, the Court stated:

> [W]e reject Rosemond's premise that § 924(c) is somehow more about using guns than selling narcotics. It is true enough, as Rosemond says in support of that theory, that § 924(c) "establishes a separate, freestanding offense that is 'distinct from the underlying [drug trafficking crime].' " . . . . But it is just as true that § 924(c) establishes a freestanding offense distinct from any that might apply just to using a gun—say, for discharging a firearm in a public park. That is because § 924(c) is, to coin a term, a combination crime. It punishes the <u>temporal and relational conjunction of two separate acts</u>, on the ground that together they pose an extreme risk of harm. <u>See</u> <u>Muscarello v. United States</u>, 524 U.S. 125, 132  (1998) (noting that § 924(c)'s "basic purpose" was "to combat the dangerous combination of drugs and guns"). And so, an act relating to drugs, just as much as an act relating to guns, facilitates a § 924(c) violation.

<u>Rosemond v. United States</u>, 134 S. Ct. 1240, 1247-48 (2014) (emphasis added). The dangerous combination crimes involved here are a (1) second-degree murder (crime of violence) facilitated by a gun and (2) assault causing serious bodily injury (crime of violence) also facilitated by a gun. The statute's plain terms permit the prosecution of both offenses.

This court and Judge Matheson's concurring opinion conclude that <u>Rosemond</u> sheds no light on the issue before us because: (1) <u>Rosemond</u> does not address the nature of the combination, whether an independent use and an independent crime of violence is required given multiple counts, and (2) <u>Rosemond</u> is an elements case, and addressed only whether the defendant had furthered an element. But I think it is significant that the Court characterized the offense as a combination crime; after all nearly every offense has multiple elements, and the Court required that, in addition to facilitating at least one of the elements, an aider-and-abettor have a state of mind that covers the entire offense. In other words, "intent must reach beyond a simple drug sale, to an armed one." 134 S. Ct. at 1248. To me, this suggests that the unit of prosecution is based upon pairing the crime of violence with the use of the firearm; not looking at two § 924(c) charges with distinct harms and deciding whether they may share an element, here, use of a firearm.

The court's opinion is largely based upon the conjecture that the government will overcharge based upon crimes of violence involving a firearm. But the government's charges in this case seem entirely logical and reasonable. Here we have two victims of grievous bodily injury resulting from the use of firearm. This simply isn't the case where the defendant's conduct with regard to a single victim results in multiple predicate offenses, and therefore multiple § 924(c) charges.[2] Each victim in this case was not only

---

[2] Thus, I am not persuaded that the seemingly contrary cases apply. <u>See</u> <u>United States v. Cureton</u>, 739 F.3d 1032, 1035, 1040 (7th Cir. 2014) (use of a firearm in interstate communication of a ransom request and attempted extortion; "both convictions are based on the exact same conduct—Cureton pointing a gun at his roommate and

3

a victim of the individual crime of violence committed against him, but is also the victim of Mr. Rentz's § 924(c) violations. If Congress favored a different result, it certainly could have said so.

Given the court's outcome, I would not foreclose the government from proving a single § 924(c) violation on different theories, i.e. single use of a firearm to commit either second-degree murder or assault resulting in serious bodily injury. Given the real world of trial and uncertain proof, the government may not be able to prove (or the defendant may successfully counter) one or both of the government's § 924(c) theories.

---

demanding she make calls to obtain money"); United States v. Phipps, 319 F.3d 177, 184-85 (5th Cir. 2003) (use of a firearm in kidnapping and carjacking; single victim); United States v. Finley, 245 F.3d 199, 203, 207 (2d Cir. 2001) (possession of firearm during distribution and possession with intent to distribute cocaine); United States v. Wilson, 160 F.3d 732, 748-50 (D.C. Cir. 1998) (use of a firearm to commit first degree murder and killing a witness to prevent him from testifying).